IRENE VAVASOUR ELDER PERKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 92941.   Filed May 17, 1963.

*Andrew E. Hurley*, for the petitioner.
*Alvin C. Martin*, for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in petitioner's income tax for the year 1958 in the amount of $1,836.45.

The issues for decision are:

(1) Whether the amount of $6,600 received in 1958 by petitioner from a trust created in her husband's will is includable in her gross income in computing her U.S. Federal income tax or is exempt from such tax under the provisions of article X of the convention between the United States of America and the Italian Republic.

(2) Whether commissions received by petitioner in 1958 as coexecutrix and cotrustee of the New Jersey estate of her deceased husband and the trust created by his will represent income from a source within the United States so as to be includable in petitioner's gross income for Federal income tax purposes.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Irene Vavasour Elder Perkins, hereinafter referred to as petitioner, is an individual residing in Piazza del Vescovado 4, Assisi, Italy. She filed her Federal income tax return on form 1040 for the calendar year 1958 on the cash basis of accounting with the district director of internal revenue at Newark, N.J.

Petitioner was born in Germany in 1883, and married Frederic Mason Perkins, an American citizen, on November 10, 1913, at London, England. The records of the American consul in Rome, Italy, indicate that petitioner has been a citizen of the United States since the date of her marriage to Frederic Mason Perkins.

Petitioner's husband, Frederic Mason Perkins (hereinafter sometimes referred to as Perkins), died on October 12, 1955, leaving a will

dated August 12, 1952, which was probated in the Bergen County Surrogate's Court at Hackensack, N.J., on October 26, 1955. For many years prior to the date of her husband's death, petitioner and her husband had resided in Assisi, Italy, and petitioner has continued to reside in Assisi, Italy, from the date of her husband's death throughout the year 1958.

Perkins' will dated August 12, 1952, was drafted by William V. Breslin, a New Jersey attorney. Breslin had acted as an adviser to Perkins for a number of years prior to 1952. In August 1952 Breslin was in Italy and discussed with Perkins the drafting of his will. After this discussion Breslin drafted the will in accordance with Perkins' directions and the will was executed by Perkins.

The Palisades Trust Co. of Englewood, N.J., and petitioner were named in Perkins' will as coexecutors and cotrustees of his estate and of a testamentary trust created in Perkins' will. Palisades Trust Co. qualified as coexecutor of the Perkins' estate on October 26, 1955, and petitioner qualified as coexecutrix of the Perkins' estate on June 5, 1956.

Sometime in October 1955, petitioner engaged Carl Abruzzese of Newark, N.J., as her attorney. Abruzzese has continued to represent petitioner as her attorney in her individual capacity during the period from October 1955 to the date of the trial of this case. Since June 5, 1956, Carl Abruzzese has represented petitioner as her attorney in her capacity as coexecutrix of Perkins' estate and as cotrustee of a testamentary trust created in Perkins' will.

In late October or early November 1955, shortly after Perkins' death, Breslin and an officer (Moore) of the Palisades Trust Co. went to Assisi, Italy, and met with petitioner. Breslin and Moore explained to petitioner the contents of the will dated August 12, 1952. They informed petitioner as to when this will was prepared and executed. Petitioner had no prior knowledge of her husband's will dated August 12, 1952. She mentioned to Breslin and Moore a prior will written in her husband's handwriting in 1948 and showed them what she stated to be a copy of such will.

In March 1956 Abruzzese arranged for the forwarding of the necessary forms to have petitioner qualify as coexecutrix and cotrustee of the Perkins' estate and trust to the American Consul in Rome, Italy. On June 5, 1956, petitioner qualified as coexecutrix and cotrustee and the sum of $17.75 in connection with the qualification was paid to the Bergen County Surrogate by Abruzzese. In June 1956, by power of attorney, petitioner appointed the Surrogate of Bergen County at Hackensack, N.J., as her agent upon whom original process might be served in connection with her duties as coexecutrix and cotrustee.

During the period from April 20, 1956, through January 2, 1958, numerous letters were exchanged between Abruzzese and petitioner with respect to the administration of the Perkins' estate. Abruzzese

advised petitioner on such matters as investment of cash belonging to the estate more advantageously than in a savings account, a bill presented by Breslin for services rendered to Perkins prior to the date of his death, the preparation and signing of the New Jersey inheritance tax return and Federal estate tax return, the exercise of stock rights with respect to American Telephone & Telegraph Co. stock, the filing of an account with the New Jersey Surrogate's Court, and petitioner's commissions as coexecutrix of the Perkins' estate and cotrustee of the Perkins' trust. In addition to correspondence with petitioner, Abruzzese corresponded with Tiberio Gualdi of Assisi, Italy, who was an adviser to petitioner. Petitioner signed the New Jersey inheritance tax return before an official in Assisi, Italy, and signed the Federal estate tax return after raising certain questions with respect thereto by corresponding with Abruzzese. She also signed the necessary papers to permit the exercise of the American Telephone & Telegraph stock rights. Petitioner refused to agree to Breslin's claim for legal fees for services to Perkins prior to his death, and Breslin dropped the claim.

In November 1955, Breslin, while in Assisi, Italy, told petitioner that she would receive less income under the 1948 will which she had exhibited to him than under the will dated August 12, 1952. Breslin advised petitioner that Perkins had told him that he wished to increase the monthly payments to her and that was the reason for the annuity provided in the will of August 12, 1952.

Abruzzese advised the Italian vice consul in a letter dated January 10, 1956, that petitioner would receive less under the 1948 will than under the probated will of August 12, 1952. In a letter dated February 3, 1956, to the Palisades Trust Co., petitioner acknowledged the validity of the will dated August 12, 1952, that had been probated in Bergen County, N.J. The will dated August 12, 1952, which was probated provided in part as follows:

I, Frederic Mason Perkins being domiciled in the city of Englewood, Bergen County, New Jersey; now living in Assisi, Province of Perrugia, Italy, a citizen of the United States of America, being of sound and disposing mind and memory, and considering the uncertainty of this life, do make, publish and declare this to be my last will and testament as follows, hereby revoking all other and former wills by me at any time made.

"*First:* after my lawful debts and taxes are paid, I give, devise and bequeath my entire estate, both real and personal of any nature whatsoever to my executors and trustees, The Palisades Trust Company, Englewood, New Jersey and my beloved wife Irene Mason Perkins in trust nevertheless for the following uses and purposes.

(a) to pay to my wife from the income of the trust the sum of Four Thousand two hundred dollars annually, payable on the first day of each month; my executors and trustees are authorized to permit payments in advance for a period of no more than three months. In the event that the income from the trust is insufficient to permit the aforementioned payment that my executors and trustees

shall be permitted to invade the corpus so as to make the annual amount of Four Thousand two hundred dollars.

(b) to pay to my wife, Irene Mason Perkins annually upon her request not more than Two Thousand four hundred dollars to be used by her for charitable purposes; payments to be made monthly on the first day of each month. My executors and trustees are authorized to permit payments in advance for a period of no more than three months.

(c) Any income of this trust in excess of payments made to my wife annually in the total sum of Six Thousand six hundred dollars I hereby direct my executors and trustees to add to the capital of the trust fund immediately after the payments are made to my wife.

(d) In the event that my wife predeceases me or dies in a common disaster with me or in the alternative upon her death after my decease, I hereby direct my executors and trustees to establish a permanent trust to be known as the "Perkins Trust" for the following purposes:

(1) to furnish aid and assistance to whatever deserving destitute and poor families and individuals they deem worthy of assistance.

(2) to contribute to convents and institutions existing for the care and education of poor and orphan children; of aged, infirm and destitute old persons; and of the blind.

(3) to contribute to institutions existing for the protection and care of animals.

(4) to contribute to convents and societies of nursing sisters of charity.

It is my expressed direction that all of the money to be spent by the "Perkins Trust" must be spent and donated solely in Italy for the reason that there is infinitely more need of charitable assistance in this country of Italy than in the United States.

*Second* I hereby give complete discretion to my executors and trustees as to what particular persons, corporations, societies or institutions any gifts or payments are to be made to. I have complete faith and trust in my beloved wife and the Palisades Trust Company that they will carry out the purposes for which I have created this trust. I have discussed with my wife and a representative of the Palisades Trust Company the types of persons and institutions who are to benefit from the "Perkins Trust" and I am certain that my wishes will be carried out in the highest degree of fidelity. Having lived in Italy for more than forty years I believe that I can best serve the poor of Italy by giving my executors and trustees the broad discretion above set forth.

*Third* I pray that no court of law or equity shall declare that this trust is too indefinite or illegal in any respect because it is exactly how I wish to dispose of my estate.

*Fourth* I hereby direct that if anyone should attack the legality of this will that he or she shall not in anyway or in any manner whatsoever share in any part of my estate even though he or she might be entitled under the laws of descent and distribution to a share thereof.

Paragraphs numbered 5 through 10 in Perkins' will dealt generally with the appointment of his executors and their powers, recognizing that both he and his wife had relatives but directing that none of his property pass to them, and contained a request that petitioner, for the remainder of her life, continue to reside in Assisi, Italy, for at least 10 months in each year.

The copy of the will which petitioner had shown to Breslin dated in 1948 provided for a trust similar to the one created in the will of

August 12, 1952, except that one-third of the income of the trust was to be paid to petitioner during her lifetime for her own use, and one-third for her to use for charities with a guaranteed payment to petitioner of $3,600 annually, in the event one-third of the trust income did not equal that amount in any year.

Much of the correspondence between petitioner and Abruzzese dealt with petitioner's desire that six specific charities in Italy be selected to receive the income of the Perkins' trust in perpetuity.

In August 1956 petitioner's deposition was taken in Rome pursuant to an order of the Bergen County Court with respect to the six charities which she had advocated to be the recipients of the Perkins' trust, and at the same time Breslin's deposition was taken in petitioner's presence. On August 16, 1956, prior to the taking of this deposition, petitioner had written a letter to Abruzzese stating as follows:

In this city there are *six* principal charitable institutions regularly organized which coincide with the Perkins Testament. So there is not other choice to be had. The Prefect of Perugia (the Provincial representative of the Italian Government) approved by letter 26 March, 1956, this list of institutes to be benefited.

I am fighting for these charitable schools ana not for myself. I have asked each one's President to send me an authentic copy of their constitutions, these "statutes" will be brought by Mr. Gualdi.

At the time of the taking of the deposition in Rome, petitioner, Breslin, and a representative of the Palisades Trust Co., reached an agreement that the six charities advocated by petitioner would be named as recipients of one-half of the income of the Perkins' trust in perpetuity.

The Palisades Trust Co. prepared a final accounting of the Perkins' estate showing total corpus in the hands of the company as of May 31, 1957, of $711,738.46 resulting from inventory of decedent's assets of $746,785.01 with certain additions for increases to corpus and transfers from income and deductions of decreases to corpus of $722.28 and debts and administrative expenses of $51,394.76. Under date of June 28, 1957, Breslin addressed a letter to Abruzzese stating as follows:

As you know before the account is noticed for settlement the question of apportionment of executors commissions on income and principal must be agreed upon if possible between Mrs. Perkins and The Palisades Trust Company.

The Palisades Trust Company's position is as follows. Mrs. Perkins did not qualify until about nine months after the death of her husband. In the meantime, the Palisades Trust Company did all the work. Throughout the entire period, Palisades Trust Company has performed all of the bookkeeping work, preparation of accounts and many other matters with which you are familiar. Therefore, it believes that commissions on income and corpus should be divided 75% to Palisades Trust Company and 25% to Mrs. Perkins. I wish you would discuss this matter with Mrs. Perkins and advise as to whether she will agree. In the event there can be no agreement then it will be necessary for the County Court to decide the apportionment.

I will be in Rome between approximately Aug. 15th and Aug. 27th. If Mrs. Perkins or Mr. Galdi [*sic*] wish to discuss this matter with me, I would be happy to do so.

Under date of September 18, 1957, Abruzzese addressed a letter to Tiberio Gualdi which stated in part as follows:

I have carefully examined all of your correspondence, as well as the letters written by Mrs. Perkins, but I am sorry to advise you that I cannot agree that the 6 charitable institutions which were named by Mrs. Perkins in her oath and in her testimony at Rome, before the Hon. Alexander J. Matturri, are the only charities entitled to all of the income of the Perkins Trust. * * * We succeeded in obtaining one-half of all of the income from the Perkins Trust for the 6 charities in perpetuity.

    *       *       *       *       *       *       *

The question now, is to file the accounting of the Executors, have commissions established and paid to the Executors, have Counsel fees allowed and paid, pay the aforesaid United States Estate Tax assessed in the sum of $1,850.95 with interest, if any, and then have the balance established as the trust fund and estate.

I have received the copy of the accounting duly signed by Mrs. Perkins, and the only question on the accounting is a questionmark alongside of the item of $43.19, charged as interest on the Inheritance Taxes paid to the State of New Jersey, as reflected on page 10 of the Account. If you have any specific objection to any other particular item, you must so state in writing, giving the reason for your objection and pointing out the page and the voucher number in the accounting.

I understand that Mrs. Perkins has already been advised by the Bank, that unless the accounting is signed and returned, in the absence of any specific objections to the items thereof, then the Bank will file their accounting and send notice of the filing thereof to Mrs. Perkins, as provided by law. She will receive 60 days notice when the accounting would come before the Probate Court for allowance and approval and for the allowance of commissions and Counsel fees.

As to the division of the commissions, I would suggest that the commissions be divided one-third to Mrs. Perkins, and two-thirds to the Bank. Of course these commissions cannot be paid to anyone until the accounting is allowed by the Judgment of the Court and commissions fixed and ordered and paid in the proportions that the Court may decide. The question of the division of the commissions is solely up to the Bergen County Court, Probate Division, which Court will take into consideration the work done by each of the Executors in fulfilling their duties in the administration of the estate from the date of the death of the Testator, the late Mr. Perkins, up to the filing of said accounting. I believe that I could persuade the Bank to accept such a division of fees, but you must understand that in the event of a disagreement amongst the Executors, the Court will be the sole judge as to how the commissions are to be divided.

Under date of November 19, 1957, Abruzzese addressed a letter to petitioner acknowledging receipt of a copy of her letter to the Palisades Trust Co. and several other letters written by her and advising her that the accounting filed by the Palisades Trust Co. was identical to the one of which she had a copy, of the claim of the Palisades Trust Co. for executors' commissions of $31,593.68, of claims for attorney's fees, and that the matter was set for hearing in the Probate Court on December 20, 1957.

On December 3, 1957, Abruzzese filed a notice on the Palisades Trust Co. that at the hearing on December 20, 1957, he would apply *on* behalf of petitioner for the allowance of commissions to her of $31,593.68. The judgment allowing the final account was entered by the Bergen County Court in open court on December 20, 1957. By order of that court the two executors were allowed commissions for estate corpus and income to May 3, 1957, in the amount of $31,593.68, to be divided 75 percent to the Palisades Trust Co. and 25 percent, or $7,898.42, to petitioner.

Breslin had filed a claim for attorney's fees with the court in the amount of $35,000 and Abruzzese had filed a claim for attorney's fees in the amount of $7,500. Abruzzese had also prepared an affidavit of services on behalf of petitioner, setting forth on the basis of information and belief the services petitioner had performed as coexecutrix and cotrustee of the Perkins' estate and Perkins' trust and Abruzzese submitted this affidavit on December 3, 1957, to the Bergen County Court, Probate Division.

The court in its final decree allowed Breslin $30,000 as attorney's fees and Abruzzese $7,500 and also allowed Abruzzese his disbursement claimed of $43.45. The court in its final decree also "ordered and adjudged that from and after the death of Irene Mason Perkins, one-half of the income from the Trust Fund then in the hands of said Trustees, shall be paid in perpetuity in equal share to" the six charitable institutions named by petitioner so long as these charities meet the spirit of the trust by serving the poor people of Italy. Under date of December 27, 1957, Abruzzese wrote a letter to petitioner reporting on the hearing on December 20, 1957, before the judge of the Bergen County Court, Probate Division, in which he referred to the State of New Jersey being represented, the Italian vice consul being represented on behalf of the charities both named and unnamed, and the fact that these representatives, as well as Breslin and himself, were before the court from 11:15 a.m. to 1 p.m., and from 2 p.m. to 4 p.m. In this letter Abruzzese stated in part as follows:

The Court in allowing the above named sum of $31,593.68 as commissions, apportioned the same 25% to yourself, to wit: $7,898.42, and 75% to the Palisades Trust Company, to wit: $23,695.26. The principal argument advanced by Mr. Breslin was to the effect that for the first 9 months you did not qualify as Executrix. I strongly urged upon the Court that the commissions should be divided equally between the Executors, because even though you qualified as Executrix and Trustee later than the date the Will was probated, the services that you rendered in selecting the six (6) charities, in procuring certified copies of their Charters and their financial statements and in having Forms 1023 of the U.S. Treasury Department properly executed by said charities, and in insisting that from the large amount of cash lying idle in the Palisades Trust Company there should be at least $100,000.00 invested immediately in the American Telephone & Telegraph Debenture Bonds, bearing 3⅞% interest and that it could not be expected of you to render the same kind of services that the Bank was

in a position to do, especially since they handled the account of Mr. Perkins for so many years; and further that when Mr. Perkins appointed you Executor in his Will and stated that he was domiciled in Englewood, N.J., and in requiring you to reside at least 10 months of the year in Italy, he, the late Mr. Perkins, knew full well that the services you would be expected to render as Executrix were certainly not of the same kind as those he expected the Palisades Trust Company to render and therefore, that under all of the facts and circumstances of this case you should in all justice be awarded one-half of the commissions.

Perkins did not own any real estate in the United States at the time of his death. Prior to his death he had occupation and possession of a villa in Italy. Since her husband's death petitioner has had occupation and possession of the Italian villa.

In 1958 petitioner received the $7,898.42 awarded her as coexecutrix's commissions and also received the amount of $718.19 as cotrustee's commissions in that year. In 1958 petitioner received $4,200 under subparagraph (a) of paragraph first of her husband's will and $2,400 under subparagraph (b) thereof, making a total amount received under the two paragraphs of $6,600.

Petitioner on her income tax return for the year 1958 reported total gross income of $12,816.70 consisting of the following items listed under schedule A: Income from dividends in the amount of $8,616.70 (share of commissions on corpus as allowed by the Bergen County Court in the amount of $7,506.72 and share of commissions as coexecutrix of the will of Frederic Mason Perkins in the amount of $1,109.98) and the amount of $4,200 as 1958 income under paragraph First (a) of the will.

Petitioner claimed a $50 dividend exclusion and reported $12 of other income consisting of $10 interest from Barclay's Bank of London and $2 of other interest, making a total income reported of $12,778.70 from which she subtracted $1,200 stated to represent two exemptions, and calculated the tax on the net balance of $11,578.70 at 15 percent which she stated to be in accordance with article 7 of the convention between the United States of America and Italy, "entered into force October 26, 1956, Re: Double Taxation."

Respondent in his notice of deficiency made no change in the amount of commissions reported by petitioner, $8,616.70, but did make an adjustment to show the amounts as commissions received and decreased petitoner's reported dividend income to $6,586.96 by determining that she received domestic qualifying dividends from estate of Frederic Mason Perkins of $6,600, less beneficiary's share of dividend exclusion of $13.04, leaving corrected net dividend income of $6,586.96. Respondent allowed the standard deduction of $1,000 and dividend credit of $263.48 as 4 percent of the dividends determined by him and computed the tax on the basis of rates applicable to a single person.

Petitioner in her petition alleged error with respect to respondent's determination and claimed an overpayment of $1,736.80 on the basis that no amount of the commissions was includable in her taxable income since it represented earned income of a bona fide resident of a foreign country exempt from tax under the provisions of section 911(a)(1) of the Internal Revenue Code of 1954 and that no portion of the $6,600 received under the Perkins' will was includable in her income since it represented an annuity under the tax convention between the United States and Italy, and, therefore, was not taxable to petitioner. During the year 1958 petitioner was a citizen of the United States and a bona fide resident of Italy for an uninterrupted period which includes the entire year 1958.

OPINION

The first issue is whether the $6,600 paid by Palisades Trust Co. to petitioner in the year 1958 in accordance with the provisions of the Perkins' will is includable in petitioner's gross income.

Petitioner in the instant case does not contend that she is not a citizen of the United States. The records of the American consul in Rome, Italy, indicate that petitioner has been a citizen of the United States since the date of her marriage to Frederic Mason Perkins in 1913, and the income tax return filed by petitioner for the year 1958 on form 1040 claiming personal exemptions and purporting to report petitioner's entire income including $10 of interest from Barclay's Bank of London indicates that the return is filed as the return of a citizen of the United States. We have found as a fact that in the year 1958 petitioner was a citizen of the United States and a bona fide resident of Italy.

As a citizen of the United States, there is includable in petitioner's income for the purpose of computing her Federal income tax all of her gross income from whatever source derived unless under some provision of the Internal Revenue Code such income is specifically excluded. Under section 61(a)(15) income from an interest in an estate or trust is specifically included in gross income. It is clear that the payment of $6,600 to petitioner in 1958 was from the income of the trust created under her husband's will and was not a payment of corpus. The amount was therefore income to petitioner from an interest in an estate or trust. While petitioner refers to the $6,600 of income as being from an annuity and in connection with her contention that as such it comes within certain provisions of the convention between the United States of America and the Italian Republic (hereinafter referred to as the tax convention), she does not make any contention that this income is taxable under sec. 72 of the Internal Revenue Code of 1954 providing special rules for taxation of annuities and certain proceeds of endowment and life insurance contracts.

Respondent devotes a portion of the argument in his brief to pointing out that the $6,600 received by petitioner in 1958 pursuant to Perkins' will does not come within the provisions of sec. 72 of the Internal Revenue Code of 1954. We consider it unnecessary to discuss this point since petitioner makes no contention that this section of the Code is applicable and there is no evidence in the record to indicate that the payments were payments from an annuity of the type dealt with in this section.

It is petitioner's contention that under the provisions of article X(2) of the tax convention between the United States and Italy which was ratified in 1956 and was in effect for the taxable year 1958, the $6,600 is not includable in her income. Under the provisions of section 894 of the Internal Revenue Code of 1954, income is exempt from Federal income tax to the extent required by any treaty obligation of the United States. Article X of the tax convention between the United States and Italy provides in part as follows:

(2) Private pensions and life annuities received from sources within one of the contracting States by individuals residing in the other contracting State shall be exempt from taxation in the former State.

(3) The term "pension," as used in this Article, means periodic payments made in consideration for past services rendered or by way of compensation for injuries received.

(4) The term "life annuities," as used in this Article, means a stated sum payable periodically at stated times during life, or during a specified number of years, under an obligation to make the payments in return for adequate and full consideration in money or money's worth.

It is petitioner's contention that the will provided for a stated sum payable periodically, that it constituted an obligation to make the payment, and that this obligation was in return for full and adequate consideration. Apparently, petitioner considers the consideration to be that she did not contest her husband's will of August 12, 1952, even though under a prior will of 1948, of which she had a copy, she might have received a greater income. Evidence is completely lacking to substantiate that petitioner's failure to contest the will was in any way consideration for the payments she received. There is nothing to show that petitioner had any basis for contesting the will. However, even if the $6,600 received by petitioner in 1958 were a "life annuity" as defined in article X of the tax convention, we think it clear from the provisions of article XV(1)(a) of that convention that article X would not require the exclusion of the $6,600 received by petitioner in 1958 from her income. Article XV provides in part:

(1) It is agreed that double taxation shall be avoided in the following manner:

(a) The United States in determining its income taxes specified in Article I of this Convention in the case of its citizens, residents or corporations may,

regardless of any other provision of this Convention, include in the basis upon which such taxes are imposed all items of income taxable under the revenue laws of the United States as if this Convention had not come into effect. The United States shall, however, subject to the provisions of sections 901, 902, 903, 904, and 905, Internal Revenue Code of 1954, deduct from its taxes the amount of Italian income taxes.

In *Marie G. Crerar*, 26 T.C. 702 (1956), we interpreted a similar provision of the Canadian tax treaty reserving to the United States the right to tax its citizens as though this convention had not come into effect to mean that the provisions of the treaty were not applicable to a citizen of the United States unless by some provision other than the treaty itself so made.

We think it clear, therefore, that respondent is correct that the entire $6,600 received by petitioner under paragraph First (a) and (b) of her deceased husband's will is includable in petitioner's gross income in computing her Federal income tax.

Petitioner on brief argues that if respondent's interpretation is correct, she should be allowed credit for taxes paid to Italy. Respondent states that the record contains no proof of taxes paid by petitioner to Italy and that, in fact, a standard deduction has been allowed by him in the notice of deficiency which is not allowable if a foreign tax credit is allowed. Petitioner in her reply brief argues that she has proved payment of foreign taxes in that certain Italian tax receipts that are attached to the reply brief had previously been exhibited to representatives of respondent. The evidence introduced at the trial of this case contains nothing to show any payment of Italian taxes by petitioner. Since we are bound by the record made at the trial and cannot consider ex parte statements made on brief or attachments submitted with a brief as a part of the evidence we have no evidence of payment by petitioner of taxes to Italy. It is also noted that there is no allegation of error in the petition or amended petition with respect to respondent's failure to allow a credit for taxes paid to Italy. There is not only no evidence with respect to the claimed payment of foreign taxes, but no issue raised by the pleadings with respect thereto. We have no issue properly before us as to whether petitioner is entitled to any credit for taxes paid to Italy.

We hold that the $6,600 received by petitioner under the provisions of the Perkins' will is taxable to petitioner in the year of its receipt, 1958.

It is petitioner's contention that the coexecutrix's commission in the amount of $7,898.42 and the cotrustee's commission in the amount of $718.19 received by her in 1958 were earned income from sources without the United States not includable in her gross income under the provisions of section 911(a)(1) of the Internal Revenue Code of

1954.[1]  Petitioner is an individual citizen of the United States and has been a bona fide resident of Italy for an uninterrupted period in excess of an entire taxable year.  Therefore, the questions which must be resolved in deciding whether the coexecutrix's and cotrustee's commissions are excludable from her income are whether these amounts constitute earned income attributable to services performed by petitioner during the period when she was a resident of Italy, and if so, whether they were received from sources without the United States.

The record is clear that during all of the period of the administration of the estate petitioner was residing in Italy.  If the commissions were attributable to any services performed by her, such services were performed during the period that she was a bona fide resident of Italy.  Respondent, in effect, concedes this but contends that the income which she received as coexecutrix and cotrustee commissions was not received from sources without the United States within the meaning of section 911 of the Internal Revenue Code of 1954.  Respondent recognizes that the criteria for determining whether income is received from sources without the United States has been not the source from which the amount was paid but the place where the services for which the amount was paid were performed, citing *Herman A. Kollmar*, 4 T.C. 727, 731 (1945), and *Ernest F. Zimmerman*, 36 T.C. 235 (1961).  In *Ingram* v. *Bowers*, 47 F. 2d 925 (S.D.N.Y. 1931), in interpreting a section of the applicable revenue laws which provided that in the case of a nonresident alien gross income includes only the gross income from sources within the United States, it was held that amounts received by a singer under a contract providing for a royalty payment with respect to recordings of his voice sold outside of the United States, constituted income from sources within the United States.  The recording had been made in the United States and the contract under which the payments were received required the singer to render the services of singing so that the recordings might be made within the United States and to refrain from signing for other phonograph companies.  It was the situs of the work performed and not the source from which the payments were received which was held controlling.  Similarly, in *Beaumont* v.

[1] SEC. 911 (a) (1) [I.R.C. 1954].  EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.

(a) GENERAL RULE.—The following items shall not be included in gross income and shall be exempt from taxation under this subtitle :

(1) BONA FIDE RESIDENT OF FOREIGN COUNTRY.—In the case of an individual citizen of the United States, who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts constitute earned income (as defined in subsection (b)) attributable to such period ; but such individual shall not be allowed as a deduction from his gross income any deductions (other than those allowed by section 151, relating to personal exemptions) properly allocable to or chargeable against amounts excluded from gross income under this paragraph.

*Helvering*, 73 F. 2d 110 (C.A.D.C. 1934), affirming 25 B.T.A. 474, in deciding whether amounts received by the taxpayer therein, a citizen of the United States who had for many years resided in France, were earned income from sources without the United States, the court approved a concession by the Government that the sums were to be considered as received from sources without the United States if they constituted compensation for services performed without the United States irrespective of the fact that the payments came from the United States. The question there decided was whether the taxpayer therein rendered any services outside of the United States or whether the payments were, in fact, for a reason other than services rendered. Cf. *Harold F. Jones*, 6 T.C. 412 (1946).

The instant case involves commissions as a coexecutrix and cotrustee of a New Jersey estate. Under New Jersey law commissions of this type are considered to be compensation for services. *Gates* v. *Plainfield Trust Co.*, 123 N.J. Eq. 519, 198 Atl. 883 (1938).[2] Since petitioner, during the entire period for which the commissions were paid, was in Italy any services that she personally performed would of necessity have to be performed in Italy. Respondent contends that petitioner did not personally perform the services for which she was compensated but that these services were performed through an agent. Respondent argues that since the estate was under the jurisdiction of the New Jersey court, petitioner's services must be considered as a matter of law to have been performed in New Jersey irrespective of petitioner's physical location at the time.

If the payment is for services rendered and such services were actually rendered in Italy, the fact that the final approval rested with the New Jersey court over the estate and trust would not.cause such services to be performed in the United States. The cases which have

[2] N.J. Stat. Ann. sec. 3A : 10–1. Allowance in general

Allowance of commissions on corpus in excess of $100,000.00 to executors, administrators, administrators with the will annexed, guardians, trustees under a will and fiduciaries appointed under chapter 40 of this Title for the property of an absentee, shall be made with reference to their actual pains, trouble and risk in settling the estate, rather than in respect to the quantum of the estate. * * *

N.J. Stat. Ann. sec. 3A : 10–2. Computation of commissions ; rates

On the settlement of accounts of fiduciaries acting in any capacity referred to in section 3A : 10–1 of this Title, their commissions over and above their actual expenses shall be computed upon the following rates :

On all income that comes into their hands, 6%, without court allowance.

If there is but 1 fiduciary, 5% on all corpus that comes into the fiduciary's hands in cases where corpus receipts do not exceed $100,000.00, and in cases where corpus receipts exceed $100,000.00, 5% on the first $100,000.00 of corpus, and, on the excess over $100,000.00 of corpus, such percentage, not in excess of 5%, as the court may determine on the intermediate or final settlement of the fiduciary's accounts, according to actual services rendered. If there are 2 or more fiduciaries, their commissions on corpus shall be the same as herein provided in the case of 1 fiduciary, and, in addition thereto, the court may allow corpus commissions in excess of the commissions to which 1 fiduciary would be entitled under this section, at a rate not exceeding 1% of all corpus for each additional fiduciary. In any case in which the administration of the fiduciary or fiduciaries has extended or extends beyond a period of 25 years, corpus commissions for such additional years shall be allowed at a rate not exceeding ⅕ of 1% per annum, irrespective of the number of fiduciaries. * * *

dealt with points of this nature have been concerned with whether the payment was for services or was in the nature of royalty or some other form of payment and was not, in fact, for services rendered. See *Herman A. Kollmar, supra,* and *Korfund Co.,* 1 T.C. 1180 (1943). In *Korfund Co., supra,* we considered that payments received by a nonresident alien under contracts made in the United States not to compete constituted income from sources within the United States in that the rights to compete given up under these contracts were property of value and that the income derived was from use thereof in the United States. In the *Korfund Co.* case we stated at page 1185:

> The petitioner's contention is based upon the theory that the income was paid for agreements to refrain from doing specific things—negative acts. No defaults occurred and during the period of compliance the promisors were residents of Germany. Petitioner's contention is that negative performance is based upon a continuous exercise of will, which has its source at the place of location of the individual, and that, as the mental exertion involved herein occurred in Germany, the source of the income was in that country, not in the United States where the promise was given. The respondent's view of the question is, in short, that, as the place of performance would be in the United States if Zorn and Stoessel had violated their contractual obligations, abstinence of performance occurs in the same place. Petitioner relies upon *Piedras Negras Broadcasting Co.,* 43 B.T.A. 297; affd., 127 Fed. (2d) 260.

In the *Korfund Co.* case we recognized that any services which the two individuals referred to in the contract might have performed as consultants would have been income from sources without the United States.

Respondent contends that Abruzzese was petitioner's agent and that petitioner's services in the United States were rendered through Abruzzese as an agent. However, the record shows that Abruzzese was petitioner's attorney and as such he obtained a fee allowance from the court in addition to the allowance petitioner obtained as executrix. The record also shows that there was an actual contest as to the fees to be allowed to petitioner. In New Jersey executors' commissions on corpus in excess of $100,000 are determined in the light of the actual services rendered with reference to the actual pains, trouble, and risk in settling the estate and not on the quantum of the estate. In determining the amount of commissions, consideration is given to whether the matters were properly to be performed by the executors or were in fact the responsibility of counsel for the executors who themselves request and receive a fee from the court for their services as counsel. *National State Bank of Newark* v. *Nadeau,* 57 N.J. Super. 53, 153 A. 2d 854 (1959). Where an executor employs an agent for extraordinary services, compensation to the agent for such services will be allowed, but a New Jersey court will not allow payment from the estate for work done by an agent for the executor which is in fact part of the executor's duty for which the executor's commission is paid. If the executor employs an agent to do work

which is the responsibility of the executor, the agent must be paid by the executor from his commission. *In re Read's Estate*, 49 A. 2d 138 (N.J. Orphans' Ct. 1946).

The evidence shows that Abruzzese as counsel was, under New Jersey law, entitled to be allowed a fee by the court. *In re Foster's Estate*, 176 Atl. 156 (N.J. Orphans' Ct. (1934)). From the facts here, it appears that the basis upon which the executor's commissions were allowed to petitioner by the New Jersey court was that petitioner had performed services. The record does show some services performed by petitioner, not only in the signing of certain necessary papers and giving advice with respect to certain investments of the estate, but particularly in selecting the charities which were to receive the income from the Perkins' trust after petitioner's death. These services differed from those of the other executor, the Palisades Trust Co., and on the evidence here we believe petitioner has shown that the services for which she was compensated were services which she performed and not services performed either by Abruzzese or Palisades Trust Co. as her agent.

Respondent relies upon *Helvering* v. *Boekman*, 107 F. 2d 388 (C.A. 2, 1939), in support of his argument that payments for services performed by an agent in the United States are not income from sources without the United States. That case involved the question of whether a nonresident alien was carrying on a trade or business within the United States and was therefore taxable on the income received from sources within the United States. It was held that the carrying on of a trade or business through an agent was the same as personally conducting such business for the purpose of determining the taxability of the income received therefrom. See also *Jan Casimir Lewenhaupt*, 20 T.C. 151 (1953), affirmed on another issue 221 F. 2d 227 (C.A. 9, 1955); *Chang Hsiao Liang*, 23 T.C. 1040 (1955); *Edward A. Newman de Vegvar*, 28 T.C. 1055 (1957). These cases involve a different question from the issues in the instant case. Petitioner here is a citizen and is entitled only to exclude income from tax under section 911(a) of the Internal Revenue Code of 1954, if such income was received from her own services without the United States. Whether she was engaged in a trade or business is immaterial. In any event, acting in an isolated instance as an executor or trustee does not constitute a trade or business. *Carl F. Fayen*, 34 T.C. 630 (1960), *McDowell* v. *Ribicoff*, 292 F. 2d 174 (C.A. 3, 1961).

The record here shows that petitioner was compensated for her minor services in the management of the estate and her services in selecting the recipients of the charitable bequests and obtaining copies of their charters. It may be that the commissions allowed petitioner were quite generous for the services she rendered. That is not the question here. The Bergen County court allowed the amounts after a hearing. We

hold that the amount of $7,898.42 received by petitioner in 1958 as coexecutrix's fees and the amount of $718.19 received as cotrustee's fees are not includable in her gross income under the provisions of section 911(a)(1) of the Internal Revenue Code of 1954.

*Decision will be entered under Rule 50.*