MARY ELLEN SCHLOSSER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schlosser v. Commissioner
Docket No. 29514-89
United States Tax Court
T.C. Memo 1992-233; 1992 Tax Ct. Memo LEXIS 248; 63 T.C.M. (CCH) 2807; April 20, 1992, Filed *248 Decision will be entered for respondent except as to the additions to tax under section 6653(b)(1) and (2). Mary Ellen Schlosser, pro se. Steve R. Johnson, for respondent. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined the following deficiencies in and additions to petitioner's Federal income tax: Additions to Tax
Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
1983
$ 36,117
$ 18,058
50% of the
$ 9,029
interest due on
$ 36,117
1984
8,130
4,065
50% of the
2,033
interest due on
$ 8,130
1985
22,072
11,036
50% of the 5,518
interest due on
$ 22,072
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. The sole issue for decision is whether petitioner qualifies for tax relief as an innocent spouse pursuant to section 6013(e)(1). [1] We hold that she does not. *249 FINDINGS OF FACT Petitioner resided in Sarasota, Florida, at the time the petition herein was filed. She filed joint Federal income tax returns with her husband, Gabriel Schlosser, for each of the 3 years in issue. Deficiencies were determined against both Mr. Schlosser and petitioner; the Schlossers filed a joint petition challenging respondent's deficiency determination. At the time the petition was filed, Mr. Schlosser was a debtor under bankruptcy protection. Respondent filed a motion to dismiss Mr. Schlosser as a party petitioner based on the automatic stay provision of the Bankruptcy Code, 11 U.S.C. section 362(a)(8) (1988). We granted respondent's motion. Schlosser v. Commissioner, 94 T.C. 816, 822 (1990). Mr. Schlosser, an accountant, owned interests in 15 businesses (all S corporations) which were primarily involved in the ownership and management of residential and commercial housing, including condominiums, a motel, and mobile home parks. The Schlossers reported losses from several of Mr. Schlosser's corporations on their 1983 and 1984 returns in excess of $ 330,000; said losses resulted in zero taxable income and claimed tax overpayments in *250 excess of $ 98,000. Respondent disallowed these losses; she also determined that on their 1985 return the Schlossers failed to report as income $ 64,000 of embezzled or misappropriated funds, which were converted to Mr. Schlosser's use. During the years at issue, petitioner was employed by the Sarasota County School Board as a middle school science teacher. She earned $ 7,023 in 1983, $ 13,901 in 1984, and $ 14,147 in 1985. Beginning in 1983, she took evening classes at the University of South Florida at Sarasota in order to obtain a master's degree in education, which she did in 1986. As a result, she was paid according to a higher pay scale and enjoyed greater job security. During the years at issue, petitioner and Mr. Schlosser shared all money they received. They jointly owned: (1) Their house, which was worth $ 125,000; (2) two condominiums, each worth $ 79,000; (3) the condominium in which petitioner's parents lived (the condominium was jointly owned with petitioner's parents); and (4) a parcel of undeveloped land. In 1983, the Schlossers bought a new $ 14,500 Toyota Cressida, which was driven predominantly by petitioner. During the summer of 1983, petitioner and her *251 daughter took a vacation to Washington, D.C. In 1984, the Schlossers took a 2-week vacation, visiting national parks in the western United States. And at some time during the years at issue, the Schlossers took a vacation in Great Britain. The Schlossers received the following Federal income tax refunds: $ 20,000 for 1983, $ 65,696 for 1984, and $ 3,386 for 1985. They deposited these refunds either into bank accounts for Mr. Schlosser's corporations or into their joint checking account. Money from the corporate bank accounts was used to pay debts for which petitioner was liable. Money from the joint checking account was used to pay: (1) Petitioner's educational expenses; (2) mortgages on their residence, their three condominiums, and their undeveloped land; (3) the down payment and the monthly payments on petitioner's new car; and (4) their vacations. In 1988, Mr. Schlosser pled guilty to multiple criminal counts, including tax fraud. He was sentenced to a 25-year prison term; as of the date of trial, he was incarcerated. OPINION Initially, we address petitioner's claim that she was denied a fair opportunity to prepare her case because Special Agent David Siegwald refused *252 her request to return various documents relating to Mr. Schlosser's corporations. Contrary to petitioner's claim, Special Agent Siegwald testified that he returned all corporate records to petitioner at least 3 months before trial. Finding Special Agent Siegwald's testimony credible, we reject petitioner's claim that she was denied a fair opportunity to prepare her case. We now turn to the sole substantive issue involved herein. Under section 6013(e)(1), a spouse is relieved of liability (innocent spouse relief) for tax attributable to a substantial understatement of tax if the spouse satisfies the following four conditions: (1) A joint return is made; (2) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse; (3) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatment; and (4) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement. The person seeking innocent spouse relief has the *253 burden of proving that all four statutory conditions have been satisfied; failure to prove any one of the conditions will prevent the spouse from qualifying for relief. Rule 142(a); Bokum v. Commissioner, 94 T.C. 126, 138 (1990). Focusing on the fourth condition, we conclude that petitioner failed to prove that, taking into account all the facts and circumstances, it would be inequitable to hold her liable for the 1983, 1984, and 1985 tax deficiencies. In determining whether it would be inequitable to hold a spouse liable for tax deficiencies, one factor we consider "is whether the person seeking relief significantly benefitted, directly or indirectly, from the items omitted from gross income." Sec. 1.6013-5(b), Income Tax Regs.; see Estate of Krock, 93 T.C. 672, 678 (1989). The parties focus on whether petitioner significantly benefitted from the tax refunds, not from the items omitted from gross income. The Schlossers deposited the refunds either into bank accounts for Mr. Schlosser's corporations or into their joint checking account. To the extent that the Schlossers deposited the refunds into the corporate bank accounts, petitioner *254 significantly benefitted: Mr. Schlosser used the corporate bank accounts to pay debts for which petitioner was personally liable. Similarly, to the extent that they deposited the refunds into the Schlossers' checking account, petitioner significantly benefitted: the Schlossers used their checking account to pay for petitioner's master's degree education; to make mortgage payments on the Schlossers' residence, three condominiums, and undeveloped land; to make the down payment and the monthly payments on petitioner's car; and to pay for part of their national parks vacation and for all of their vacations in Washington, D.C., and Great Britain. Another factor we consider in determining whether it would be inequitable to hold a spouse liable for tax deficiencies is whether "the person seeking relief has been deserted by his spouse or * * * has been divorced or separated from such spouse." Sec. 1.6013-5(b), Income Tax Regs. Here, petitioner did not assert that Mr. Schlosser deserted her or that they were divorced or separated. To the contrary, in her answering brief, petitioner states that Mr. Schlosser "is a faithful partner who has always provided love and care to her". Petitioner *255 argues that it would be inequitable to hold her liable because "The family did not live beyond its means and was frugal in its existence". She explains, for example, that they bought a Toyota Cressida, not a Mercedes or a Jaguar convertible, and that she took a vacation every year, not just in 1983, 1984, and 1985. Further, she protests that she owned no expensive jewelry, clothes, or furs. We interpret petitioner's arguments to be that she received only normal support as a result of the tax refunds. We agree that normal support, which is measured by the circumstances of the parties, does not constitute a significant benefit. Flynn v. Commissioner, 93 T.C. 355, 367 (1989); sec. 1.6013-5(b), Income Tax Regs. However, petitioner failed to introduce any evidence as to what constituted her normal support in the years either before or after the years in issue. Estate of Krock v. Commissioner, 93 T.C. at 681 ("There is some evidence in this case indicating that Mrs. Krock may have derived significant benefit from the understatements. This makes it all the more important to hold petitioner to its burden of proving facts showing that Mrs. Krock *256 did not receive significant benefit over and above normal support."). In addition, to the extent that the Schlossers used the refunds to pay the mortgages on their three condominiums and undeveloped land, they were using the refunds for investments, not for support. Petitioner asserts in her answering brief that she did not benefit from the tax refunds because they were deposited only into the bank accounts of her husband's corporations, not into the Schlossers' checking account. The record does not support this assertion. Mr. Schlosser testified that he may have deposited each refund check into either his corporate accounts or the Schlossers' checking account, but that he did not know which. Even assuming that Mr. Schlosser deposited the refund checks into his corporate accounts, money from the corporate accounts was used to pay debts for which petitioner was liable. With respect to whether petitioner benefitted by using the tax refunds to pay for her master's degree education, petitioner states that: (1) The Florida Department of Education eventually reimbursed her for the cost of her tuition because she received A's and B's in her courses; (2) her increased pay was due not *257 only to her master's degree, but also to union negotiations; and (3) her pay did not increase until August, 1986, when she submitted the necessary documentation concerning her master's degree. We need not address petitioner's statements concerning reimbursement and union negotiations because she made them for the first time in her answering brief, not in her trial testimony. Perkins v. Commissioner, 40 T.C. 330, 340 (1963). However, it was apparent from her trial testimony (and we recognize) that she was not paid according to a higher pay scale until she received her master's degree. Nonetheless, she benefitted because her pay was eventually increased as a result of the tax refunds. As explained in section 1.6013-5(b), Income Tax Regs., "Evidence of direct or indirect benefit may consist of transfers of property, including transfers which may be received several years after the year in which the omitted item of income should have been included in gross income." Petitioner claims she received no benefit by using the tax refunds to pay the mortgages on their house, condominiums, and undeveloped land. In her answering brief she explains that two of the condominiums *258 have been sold. Again, the trial testimony does not support petitioner's claim. There was no testimony that any of the real property was sold during 1983, 1984, or 1985. With respect to the purchase of the new car in 1983, petitioner objects that Mr. Schlosser did not transfer title to the car to her until after 1985. She also states that she does not remember what car, if any, was traded in at the time of that purchase. Assuming Mr. Schlosser did not transfer the car's title to petitioner until after 1985, petitioner still significantly benefitted because she eventually received the title as a result of the tax refunds. Sec. 1.6013-5(b), Income Tax Regs. Moreover, prior to obtaining title to the car, petitioner benefitted because she predominantly used the car. With respect to whether the Schlossers traded in a car on their purchase of the new car, petitioner introduced no evidence at trial concerning any car that was traded in. Petitioner objects that she did not benefit to the extent they used the refunds to pay for part of their national parks vacation and to pay for all of their Washington, D.C., vacation. Petitioner explains that the vacations were educational for *259 her daughter. Regardless of the educational nature of petitioner's vacations, we find that the three vacations, including the vacation to Great Britain, constituted a significant benefit to petitioner. With respect to whether petitioner benefitted because Mr. Schlosser used money from his corporate bank accounts to pay debts for which petitioner was personally liable, petitioner explains that "she had no awareness that * * * business-related debts would affect the petitioner because of her signature." Petitioner was liable for these debts, regardless of her ignorance of the legal consequences of being a signatory. Thus, we find that petitioner significantly benefitted from the use of the tax refunds to pay debts for which she was personally liable. Decision will be entered for respondent except as to the additions to tax under section 6653(b)(1) and (2). Footnotes
1. By Order dated January 16, 1991, we granted respondent's motion to dismiss for failure to state a claim on which relief can be granted except for the innocent spouse and fraud issues. At trial, respondent conceded the fraud issue.↩