T.C. Memo. 2010-159


UNITED STATES TAX COURT


GERLIE V. AND PATSY R. RICKARD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5842-06.                    Filed July 22, 2010.


Gerlie V. and Patsy R. Rickard, pro sese.

<u>Rebecca Dance Harris</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


GALE, <u>Judge</u>:  Respondent determined a deficiency of $75,966
with respect to petitioners' 2001 Federal income tax.  The sole
issue for decision is whether $233,327 petitioners received
during 2001 to fund their first-year premiums on three life
insurance policies is taxable to them.

Unless otherwise noted, all section references are to the Internal Revenue Code of 1986 as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar.

FINDINGS OF FACT

Some facts are stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference. At the time the petition was filed, petitioners resided in Tennessee.

In late 2001 petitioners purchased three life insurance policies through the same broker, Luther T. Smith. In each instance Mr. Smith, through his corporation Eagle Financial Group, Inc. (Eagle), issued a check to petitioners to cover the cost of the initial premium on the policy, which petitioners deposited. Petitioners wrote their own check to the insurance company to pay the premium. Mr. Smith earned commissions on each of the policy sales to petitioners that ranged from 110 to 145 percent of the initial premium due. The particulars of each policy purchase are discussed below.

On November 27, 2001, Mr. Smith sold petitioners a life insurance policy issued by Shenandoah Life Insurance, with petitioner Patsy R. Rickard (Mrs. Rickard) as owner and insured, and petitioner Gerlie V. Rickard (Mr. Rickard) as beneficiary.

On or around December 6, 2001, Mr. Smith provided funds to petitioners for the premium by having Eagle issue a check for $5,778, the amount of the initial premium on the policy, to Mr. Rickard. Petitioners deposited the check into their bank account. On December 7, 2001, petitioners' check to Shenandoah Life Insurance for $5,778 cleared their bank account.

On December 1, 2001, Mr. Smith sold petitioners a life insurance policy issued by Amerus Life Insurance, with Mrs. Rickard as owner, Mr. Rickard as insured, and Mrs. Rickard as beneficiary. On December 20, 2001, petitioners' check to Amerus Life Insurance for $195,250, the amount of the initial premium on the policy, cleared their bank account. On or around December 21, 2001, Mr. Smith provided funds to petitioners for the premium by having Eagle issue a check for $195,250 to Mr. Rickard. Petitioners deposited the check into their bank account.

On December 14, 2001, Mr. Smith sold petitioners a second life insurance policy issued by Amerus Life Insurance, with Mr. Rickard as owner, Mrs. Rickard as insured, and Mr. Rickard as beneficiary. On or around December 21, 2001, Mr. Smith provided funds to petitioners for the premium by having Eagle issue a check for $32,300, the amount of the initial premium on the policy, to Mr. Rickard. Petitioners deposited the check in their bank account. On December 27, 2001, petitioners' check to Amerus Life Insurance for $32,300 cleared their bank account.

On December 1, 2001, Mr. Rickard executed a recourse promissory note for $201,108 in favor of Eagle. The note was payable 1 year from the date of execution, "with interest to be paid, at the rate of 3 per centum per annum, from date payment is due." As of the time of trial, petitioners had made no payments on the promissory note.

On December 1, 2003, petitioners canceled the first Amerus Life Insurance policy. On February 14, 2004, petitioners canceled the second Amerus Life Insurance policy. On February 27, 2004, petitioners canceled the Shenandoah Life Insurance policy.

In 2003 Ohio National Insurance Co. brought suit against Mr. Smith and his related companies alleging, among other things, that he engaged in the practice of "rebating".[1]

On their joint Federal income tax return for 2001, petitioners did not report as income any portion of the amounts

---

[1]Rebating is the practice whereby an insurance broker offers to pay the initial premium on an insurance policy (or provides some other consideration not authorized by the policy itself) to induce a buyer to purchase the policy from that broker. See Tenn. Code Ann. 56-8-104(8)(A) (Supp. 2009) ("The following practices are defined as unfair trade practices in the business of insurance by any person: * * * Except as otherwise expressly provided by law, knowingly permitting or offering to make or making any policy of insurance, including * * * life insurance * * * or paying or allowing * * * as inducement to the policy, any rebate of premiums payable on the policy, or any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement whatever not specified in the policy".)

received from Eagle in 2001. Respondent mailed a timely notice of deficiency for 2001 which determined that petitioners were required to include in income the $233,327 they received from Eagle in 2001.

## OPINION

Respondent's determinations in the notice of deficiency are presumed correct, and petitioners bear the burden of proving that the determinations are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[2]

When a taxpayer purchases insurance coverage but, pursuant to a rebating scheme, receives a reimbursement of his premium payment from an insurance broker, the taxpayer has received income within the meaning of section 61, measured by the amount of the premium reimbursement, or rebate, received. Wentz v. Commissioner, 105 T.C. 1, 12-14 (1995); see also Woodbury v. United States, 72 AFTR 2d 93-6140, 93-2 USTC par. 50,528 (D.N.D. 1993), affd. per curiam without published opinion 27 F.3d 572 (8th Cir. 1994). The income must be recognized in the year the rebate is received. Wentz v. Commissioner, supra at 14. While petitioners insist that they did not engage in an insurance rebating scheme, the reimbursement arrangements between them and

---

[2]Petitioners have not claimed any shift in the burden of proof to respondent under sec. 7491(a). In any event, petitioners have not provided "credible evidence" within the meaning of that section with respect to any factual issue in dispute. See Higbee v. Commissioner, 116 T.C. 438, 442 (2001).

their insurance broker are indistinguishable from the transactions at issue in <u>Wentz</u> and <u>Woodbury</u>, and the same result obtains here.

Petitioners contend, however, that they did not realize income from the reimbursements because Mr. Rickard gave promissory notes to Eagle obligating him to repay the reimbursed amounts. Where the taxpayer receiving a premium-reimbursing rebate from the insurance broker gives the broker a <u>nonrecourse</u> note, secured by the policy, in the amount of the reimbursement, such a note has not precluded a determination that the rebate is income to the taxpayer where the note did not constitute genuine indebtedness. <u>Sutter v. Commissioner</u>, T.C. Memo. 1998-250; <u>Haderlie v. Commissioner</u>, T.C. Memo. 1997-525. Nonrecourse notes provided by the taxpayer to the rebating insurance broker do not create genuine indebtedness where there is no evidence of an intention to repay the notes. <u>Sutter v. Commissioner</u>, <u>supra</u>; <u>Haderlie v. Commissioner</u>, <u>supra</u>.

The promissory note[3] Mr. Rickard executed in favor of Eagle was recourse.[4]  However, the recourse nature of the note's terms is immaterial because we conclude, as explained hereafter, that the note did not constitute genuine indebtedness.

Determining whether a promissory note constitutes genuine indebtedness requires an examination of all of the facts and circumstances.  Fisher v. Commissioner, 54 T.C. 905, 909 (1970). A good faith intent of the debtor to repay and a good faith

---

[3]There is only one promissory note in evidence:  a note for $201,108, dated Dec. 1, 2001, and executed by Mr. Rickard in favor of Eagle.  Petitioners attached to their brief what purported to be two additional promissory notes for $5,951 and $33,269, dated Nov. 27 and Dec. 14, 2001, respectively. Petitioners contend that Mr. Rickard executed these two notes in favor of Eagle in connection with the premium reimbursements for the Shenandoah policy and the second Amerus policy.  However, attachments to briefs are not evidence in a case, and we do not consider those attachments here.  See Rule 143(c); Kwong v. Commissioner, 65 T.C. 959, 967 n.11 (1976); Perkins v. Commissioner, 40 T.C. 330, 340 (1963).  Accordingly, the only purported indebtedness for which there is competent evidence in this case is the $201,108 promissory note.

We observe that the face amount of the Dec. 1, 2001, note in evidence--$201,108--approximates the sum of the first two reimbursements from Eagle:  $5,778 in connection with the Nov. 27, 2001, purchase of the Shenandoah policy and $195,250 in connection with the Dec. 1, 2001, purchase of the first Amerus policy.  Petitioners offer no explanation as to why the Dec. 1, 2001, promissory note had a face value of $201,108 if its purpose was to secure repayment of only the $195,250 reimbursement for the first Amerus policy.  Because we conclude that the $201,108 promissory note did not evidence genuine indebtedness, we need not explore this discrepancy further.

[4]Respondent contends on brief that the note was nonrecourse. However, the note on its face is not secured, and Eagle's recovery is in no way confined to any identified asset.  We accordingly conclude that by its terms the note was recourse.

intent of the creditor to enforce repayment are the most important elements of this determination.  Id. at 909-910. Courts look to several factors in determining whether the parties had the requisite good faith intent, including:  Whether there was a written loan agreement, whether there was a fixed schedule for repayment, whether any security or collateral was requested, whether interest was charged, whether there has been a demand for repayment, whether the loan was reflected in the parties' books, whether any repayments have been made, and whether the borrower was solvent at the time of the loan.  See Reed v. Commissioner, T.C. Memo. 1994-611; Sattelmaier v. Commissioner, T.C. Memo. 1991-597.

The relevant factors in this case rebut the notion that petitioners had a good faith intent to repay, or that Mr. Smith intended to enforce repayment, when the note was executed.  Most significantly, there is no evidence of a demand for repayment or of any other action by the purported debtor or creditor occasioned by the failure to make payment when due.  See Reed v. Commissioner, supra (failure of lender to demand repayment is factor indicating indebtedness is not genuine).  Moreover, petitioners had not made any payment of principal or interest on the note at the time of trial--some 5½ years after the note became due.  See Fairchild v. Commissioner, T.C. Memo. 1970-329 (lack of any effort to repay is significant factor indicating

indebtedness is not genuine), affd. 462 F.2d 462 (3d Cir. 1972). Finally, there is no evidence that any collateral was provided.

Mr. Rickard testified that no payments were made on the note because he had lent greater amounts to Mr. Smith that had not been repaid. Mr. Smith was not called to testify, and in the absence of his testimony or any competent evidence to corroborate purported indebtedness running to Mr. Rickard from Mr. Smith, we do not accept Mr. Rickard's self-serving testimony. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Yang v. Commissioner, T.C. Memo. 2000-263.

For the foregoing reasons, we find that there was never any good faith intention to repay, or to demand repayment of, the $201,108 note. There is no competent evidence of any additional notes. Consequently, there was no genuine indebtedness offsetting petitioners' receipt of the $233,327 in premium rebates in 2001. Thus, under Wentz v. Commissioner, 105 T.C. 1 (1995), petitioners received taxable income in this amount in 2001.

To reflect the foregoing,

Decision will be entered

for respondent.