MARIE G. CRERAR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55532. Filed June 27, 1956.

*William Burry, Esq.*, for the petitioner.
*J. Bruce Donaldson, Esq.*, for the respondent.

### OPINION.

HARRON, *Judge:* The Commissioner determined a deficiency in income tax for the calendar year 1952 in the amount of $1,097.64. The deficiency, for the most part, results from the Commissioner's determination that the rates of tax provided by sections 11 and 12 of the 1939 Code are applicable in determining the correct United States income tax due from petitioner.

The petitioner, a citizen of the United States, was a resident of Canada during all of 1952. The petitioner contends that taxation of her income for 1952 is governed by the Tax Convention between the United States and Canada effective January 1, 1941, as amended, and that under the Convention the rate of tax upon her income is 15 per cent of gross income. The respondent contends that the income to be taxed is petitioner's net income, and that the net income is taxable at the rates prescribed by sections 11 and 12, 1939 Code.

Because of a small error in petitioner's return for 1952, which was prepared by a bank in Chicago, it is admitted that there is a small understatement of gross income which gives rise to a deficiency. The parties are agreed that if petitioner's theory is correct and she is sustained, the deficiency for 1952 is $130.86, but if the respondent's theory is correct and he is sustained, there is a deficiency of $1,097.64.

There is no dispute about the facts, all of which have been stipulated. The stipulation is incorporated herein by this reference.

Petitioner's return for 1952 was filed with the director of internal revenue for the first district of Illinois. It was prepared by the First National Bank of Chicago.

Petitioner is the widow of John Crerar, deceased; she has not remarried; she was over 65 years old in 1952; she permanently resides in Canada; and she was and still is a citizen of the United States. During 1952, petitioner was a resident of Chester, Nova Scotia, Canada. All of petitioner's income for the year 1952 was derived from sources within the United States. None of petitioner's income for 1952 was compensation for services performed outside the United States.

Most of petitioner's income for 1952 was derived from two trusts, created under the laws of Illinois, of which the trustee is the First National Bank of Chicago, an Illinois corporation. The corpora of the two trusts consist of stocks, bonds, and real estate. All of the

1952 income of the trusts was earned in and derived from sources within the United States.

The items of petitioner's gross income for 1952 which were derived from sources within the United States are set forth in the following schedule, as well as the items which are deductible, the exemptions to which petitioner is entitled, and her net income if her net income is to be computed under the provisions of the 1939 Internal Revenue Code. In 1952, petitioner sold capital assets, securities of corporations organized in the United States, for a gain of $1,736.43. If her income for United States income tax is computed under provisions of the 1939 Code, one-half of the capital gain, $868.21, is recognized for taxation. Petitioner paid Canadian income tax for 1952 in the amount of $2,149.88, and in 1952 she received $872.41 as a refund of income tax paid to the Dominion of Canada. For 1952, petitioner's gross income (including 100 per cent of capital gains), her expenditures which are deductible, her exemptions, and her net income under the 1939 Code, were as follows:

| Items | Gross income | Deductions and exemptions |
|---|---|---|
| Trust income | $14,394.84 | |
| Capital gain | 1,736.43 | |
| Tax refund, Canada | 872.41 | |
| Contributions | | $10.00 |
| Real estate taxes | | 499.16 |
| Income taxes, Canada | | 2,149.88 |
| Medical expense | | 1,250.00 |
| ½ capital gain | | 868.22 |
| Exemption, personal | | 600.00 |
| Exemption, old age | | 600.00 |
| Totals | $17,003.68 | $5,977.26 |
| Net income | | 11,026.42 |

In her United States income tax return for 1952, the amount of income tax which was reported is $2,289.46, which amount represents 15 per cent of gross income in the amount of $15,263.05.[1] In the return, no deductions of any kind were taken, i. e., no deductions were taken for personal and old age exemptions, income tax paid to Canada, real estate taxes, or any other kind of deductible expenditure. The refund of tax from the Dominion of Canada was omitted due to an oversight. It was stated in the return that "income is taxable at 15 per cent in accordance with the Tax Treaty between the United States of America and Canada."

The petitioner concedes that her gross income is $17,003.68, and that the deductions and exemptions to which she would be entitled if respondent's theory is correct are as set forth in detail above.

---

[1] The "gross income" reported in petitioner's return comprised the following items: Trust income, $14,394.84; 50 per cent of capital gain, $868.21; total, $15,263.05.

The issue is whether petitioner, a nonresident citizen, is on "the same footing" as a resident citizen for the purpose of computing the amount of her United States income tax, under the facts, for 1952; that is to say, whether the tax is to be computed upon her *net* income (as computed under provisions of the 1939 Internal Revenue Code), at the rates prescribed in sections 11 and 12 of the Code.

Petitioner contends that she is not "on the same footing" as a resident citizen for our income tax purposes, but that she is entitled to have her United States income tax computed on the basis of her *gross* income at the flat rate of 15 per cent thereof, under certain provisions of the Convention and Protocol between the United States and Canada, 56 Stat. 1399, proclaimed by the President of the United States on June 17, 1942, and effective January 1, 1941 (hereinafter referred to as the Tax Convention), and under certain subsequent modifications thereof. Petitioner cites no authority for her contention other than paragraph 1 of article XI thereof which is set forth in the margin.[2]

The respondent states on brief that article XI, paragraph 1, of the Tax Convention between the United States and Canada does not apply to a citizen of the United States residing in Canada and that, therefore, a citizen of the United States who resides in Canada is taxable under the Internal Revenue Code. Respondent refers to article XVII of the Tax Convention which provides as follows:

Notwithstanding any other provision of this convention, *the United States of America in determining the income and excess profits taxes, including all sur-taxes, of its citizens* or residents or corporations, *may include in the basis upon which such taxes are imposed all items of income taxable under the revenue laws of the United States of America as though this convention had not come into effect.* [Italics supplied.]

The respondent states that "Article XVII of the Tax Convention between the United States and Canada specifically provides that the United States may determine the income tax of its citizens as if the Convention had not come into effect." Respondent refers, also, to the regulation promulgated pursuant to section 62 of the 1939 Code and article XVIII of the Convention, T. D. 5206, 1943 C. B. 526, which provides, in part, as follows:

SEC. 7.21. SCOPE OF REGULATIONS.— * * *
* * * * * * *
The convention does not, except as provided in the first paragraph of Article VI, affect the liability to United States income tax of Canadian citizens resident in the United States nor does it affect such liability of a citizen of the United

---

[2] Article XI.
1. The rate of income tax imposed by one of the contracting States, in respect of income derived from sources therein, upon individuals residing in, or corporations organized under the laws of, the other contracting State, and not having a permanent establishment in the former State, shall not exceed fifteen per cent for each taxable year.

States residing in Canada. It has no application to individuals nonresident as to Canada even though such nonresident is a citizen of Canada.

The respondent has correctly stated the law as it applies to the question presented, under the facts here. Under article XVII, as amended, of the Tax Convention with Canada, the United States reserves the right "to tax its citizens * * * as though the convention had not come into effect," with certain exceptions. See Report of the Secretary of State to the President of the United States, dated June 29, 1950, reprinted in 5–B P.–H. 1956 Fed. Taxes par. 57,059; S. Rept., Exec. R, 81st Cong., 2d Sess.; and S. Exec. Rept. No. 3, 77th Cong., 2d Sess. (May 20, 1942), from the Committee on Foreign Relations, on the Tax Convention with Canada, where it is stated (p. 1) :

The convention makes no change in the United States tax liability of American citizens and residents and domestic corporations. Under the Federal income-tax laws, such taxpayers are liable upon their income from all sources whether derived from within or without the United States. To avoid double taxation, the United States income tax allows them a credit against the Federal income tax for income taxes paid to foreign countries.

The argument of the petitioner is to the effect that the provisions of article XVII of the Tax Convention do not specifically state that the United States, in determining the income tax (and other taxes) of its citizens (and others) reserves the right to compute the amount of the tax, i. e., use tax rates, under provisions of the Internal Revenue Code, and therefore article XI, paragraph 1, of the Tax Convention applies and the rate of tax shall be 15 per cent. Petitioner's contention appears at first to be logical, and it is understandable. Nevertheless, we are obliged to affirm the respondent's statement of the law embodied in the Tax Convention which, in article XVII, reserves to the United States the right to tax its citizens, *both those residing in the United States and those residing in Canada,* "as though this convention had not come into effect." This reservation is implicit in the wording of article XVII of the Tax Convention.[3]

Petitioner fears that the Commissioner has departed from, in the determination giving rise to the issue presented, other provisions of

---

[3] See "Treaties to Eliminate International Double Taxation and Fiscal Evasion," Roy Blough, New York University Fifth Annual Institute on Federal Taxation (1947), p. 211, where it is pointed out that the United States, "almost uniquely in the world, follows its citizens abroad and subjects them to taxation even after they have established residence in a foreign country." See, however, section 131, 1939 Code.

See also "Income Tax Treaties with France, Sweden and Canada, and the Convention with Great Britain and Northern Ireland," Clarence Castimore, New York University Fourth Annual Institute on Federal Taxation (1946), pp. 537, 539, where the following is noted :

One common feature of all [the treaties] is that each nation retains full authority to tax its own citizens * * * according to its own laws * * * Due to the difference between the types of taxes levied and the rates imposed in the various countries, some of the arrangements to avoid double taxation are worked out by credit rather than exemption and yet allow the composite rate of the two countries to equal roughly the rate of taxation in the country of which the taxpayer is a national.

the Tax Convention, namely, article XI, paragraph 1, but that is not true. In determining the tax deficiency of this taxpayer, the Commissioner has followed the provisions of article XVII of the Tax Convention, and has accorded to this taxpayer the same treatment as other taxpayers receive in the same situation.

If there is serious doubt about the meaning of article XVII of the Tax Convention with Canada, then we resort to the rule that the Commissioner's interpretation in his regulation and his administrative practice over a period of more than 10 years are to be given great weight. *Brewster* v. *Gage*, 280 U. S. 327; *Commissioner* v. *South Texas Lumber Co.*, 333 U. S. 496; *United States* v. *Cerecedo Hermanos y Compania*, 209 U. S. 338; and *Lykes* v. *United States*, 343 U. S. 118.

In his determination, the Commissioner has allowed petitioner credit [4] for income tax paid to Canada in 1952. This credit accomplishes some relief from double taxation and it constitutes all of the allowable relief.

The Commissioner's determination is sustained.

*Decision will be entered for the respondent.*

[4] T. D. 5206, 1943 C. B. 526, 541.
SEC. 7.35. CREDIT AGAINST UNITED STATES TAX LIABILITY FOR INCOME TAX PAID TO CANADA.—For the purpose of avoidance of double taxation, Article XV provides that, on the part of the United States, there shall be allowed against the United States income and excess profits tax liability a credit for any such taxes paid to Canada by United States citizens or domestic corporations. Such principle also applies in the case of a citizen of Canada residing in the United States. Such credit, however, is subject to the limitations provided in section 131, Internal Revenue Code (relating to the credit for foreign taxes). See sections 19.131–1 to 19.131–8, Regulations 103. The article is complementary to the provisions of Article XVII, which provides that the United States in ascertaining the income and excess profits tax of its citizens and residents and corporations may take into the basis upon which such taxes are imposed all items of income as though the convention had not come into effect.
[1] The following cases are here consolidated: The Pittsburgh Milk Company, Now Dissolved, by David A. Vinocur, Morris Vinocur, and Louis M. Vinocur, and Morris Vinocur and David A. Vinocur, Trustees under an Indenture of Trust dated January 10, 1946, Between Estyre V. Tucker, Donor, and David A. Vinocur and Morris Vinocur, Trustees, for the Benefit of Judy Tucker and Shirley Tucker, being all the Former Officers, Directors, and/or Shareholders of The Pittsburgh Milk Company, Now Dissolved, Docket Nos. 40271 and 48226; Trust Under Agreement Dated January 10, 1946, Between Estyre Vinocur Tucker, Transferee, for the Benefit of Judy Tucker and Shirley Tucker, and Morris Vinocur and David A. Vinocur, Trustees, Docket Nos. 40272 and 48227; David A. Vinocur, Transferee, Docket Nos. 40273 and 48223; Morris Vinocur, Transferee, Docket Nos. 40274 and 48225; Louis M. Vinocur, Transferee, Docket Nos. 40275 and 48224; David A. Vinocur and Morris Vinocur, Trustees for the Benefit of Judy Tucker and Shirley Tucker, Transferees, Docket No. 48228.