ANTOINE L. CINI, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

GERTRUD CINI, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4962–75, 5115–75.   Filed February 28, 1977.

---

[9] See also *Estate of Cornelia P. Cook,* T.C. Memo. 1970-68.

*Sanford Zisman,* for the petitioners.
*Jeff P. Ehrlich,* for the respondent.

OPINION

DRENNEN, *Judge:* In these consolidated cases respondent determined deficiencies in petitioners' income taxes for the taxable years indicated as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 4962–75 | Antoine L. Cini | 1970 | $2,262.87 |
| | | 1972 | 2,504.73 |
| 5115–75 | Gertrud Cini | 1970 | 2,689.52 |
| | | 1972 | 1,456.40 |

Due to concessions by the parties the only issue remaining for decision is whether respondent has properly determined the portion of the income of Antoine L. Cini which is attributable to sources within the United States as opposed to foreign sources; specifically, whether bonuses received by Antoine L. Cini from his employer were attributable partly to sources within the United States or entirely to sources without the United States.

All of the facts were stipulated and the case was submitted under Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and the exhibits attached are incorporated herein by this reference.

Petitioners are husband and wife and resided at 9 Boulevard du Chateau, 92 Neuilly S/Seine, France, at the time the petition herein was filed. Petitioner Antoine L. Cini is a citizen of the United States and filed his 1970 and 1972 income tax returns with the Office of Internal Revenue Service, Philadelphia, Pa. Petitioner Gertrud Cini is a citizen

of France, and filed no returns for the calendar years 1970 and 1972.

Respondent concedes that petitioner Antoine L. Cini is entitled to exclude $25,000 from gross income in each of the years 1970 and 1972, pursuant to section 911, I.R.C. 1954.[1]

Petitioners concede that one-half of the income with its source in the United States was includable in the gross income of petitioner Gertrud Cini in each of the taxable years 1970 and 1972, pursuant to the community property law of France. (Hereinafter, all references to the petitioner are to petitioner Antoine L. Cini.)

Petitioner is employed by J-M Europe Corp., a subsidiary of Johns-Manville Corp., the purpose of which is to transact business in Europe similar to that of Johns-Manville Corp., its parent, in the United States. J-M Europe Corp. was incorporated in Delaware on April 18, 1968.

As an employee of J-M Europe Corp., petitioner's job title was "Vice-President of Foreign Operations." His work was essentially that of an executive overseeing the operations of various subsidiaries of Johns-Manville Corp. which were doing business in Europe. In this capacity, he traveled throughout the world. The time he spent in the United States was for the purpose of attending executive meetings with the headquarters staff of Johns-Manville Corp.

Petitioner received from J-M Europe Corp. $57,224 in total compensation for the year 1970, and $83,997 in total compensation for the year 1972. Of these amounts $13,635 was received as a bonus in 1970 and $16,965 was received as a bonus in 1972.

Amounts received as bonuses in 1970 and 1972 by petitioner were paid in two installments by J-M Europe Corp.

The amount of bonuses paid to petitioner was determined by the following formula:

(a) Petitioner received $225 for every $60,000 of earnings before tax, interest, and adjustments of subsidiaries of Johns-Manville Corp. which did business in France, Italy, Great Britain, Sweden, West Africa, Iceland, and the Middle East, and which were under the jurisdiction of petitioner. The

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

bonus petitioner received based on this portion of the formula was $11,821.50 in 1970 and $14,759.55 in 1972.

(b) Petitioner received $225 for every $120,000 of pretax export earnings of Johns-Manville Corp. These earnings are generally from materials of U.S. origin sold by international personnel stationed overseas (Europe, Africa, and the Middle East). The bonus petitioner received based on this portion of the formula was $1,813.50 in 1970, and $2,205.45 in 1972.

The remainder of the compensation received by petitioner (other than the bonus) was a fixed salary which petitioner received for the performance of service for Johns-Manville Corp., J-M Europe Corp., and various other subsidiaries of Johns-Manville Corp. These services were performed by petitioner Antoine L. Cini as an employee of J-M Europe Corp.

In 1970 petitioner worked a total of 240 days, of which 97 were in the United States. In 1972 petitioner worked a total of 240 days, of which 45 were in the United States.

Respondent determined that 97/240 of the total compensation received by petitioner from his employer for the year 1970 (including bonuses), or $22,890, was income attributable to sources within the United States and that the remainder, or $34,334, was attributable to sources without the United States. One-half of each of these amounts was allocated to petitioner's wife as her share of the community income. For the year 1972 respondent determined that 45/240 of the total compensation received by petitioner (including bonuses) was United States source income and the balance was foreign source income.

Petitioner claims that the entire amount of the bonuses he received from his employer for 1970 and 1972 was attributable to sources without the United States and should be excluded from the computation of his earned income from sources within the United States.

Section 911 provides that amounts received from sources without the United States which constitute earned income attributable to services performed during a full taxable year by a citizen of the United States who has been a bona fide resident of a foreign country throughout the taxable year shall not be included in gross income and shall be exempt

from tax, within certain limitations which are not in dispute here.

Section 861(a) provides in part that the following items of gross income shall be treated as income from sources *within* the United States:

(3) * * * Compensation for labor or personal services performed in the United States * * *

Section 862(a) provides that the following items of gross income shall be treated as income from sources *without* the United States:

(3) compensation for labor or personal services performed without the United States;

Section 1.861–4(a)(1), Income Tax Regs., provides that gross income from sources within the United States includes compensation for labor or personal services performed in the United States irrespective of the residence of the payer, the place in which the contract for services was made, or the place or time of payment. Subparagraph (b)(1)(i) of the same section of the regulations stated:

If a specific amount is paid for labor or personal services performed in the United States, that amount * * * shall be included in the gross income. If no accurate allocation or segregation of compensation for labor or personal services performed in the United States can be made, or when such labor or service is performed partly within and partly without the United States, the amount to be included in the gross income shall be determined on the basis that most correctly reflects the proper source of income under the facts and circumstances of the particular case. In many cases the facts and circumstances will be such that an apportionment on the time basis will be acceptable, that is, the amount to be included in gross income will be that amount which bears the same relation to the total compensation as the number of days of performance of the labor or services within the United States bears to the total number of days of performance of labor or services for which the payment is made. In other cases, the facts and circumstances will be such that another method of apportionment will be acceptable.

Petitioner does not question the validity of the regulation nor that respondent's use of the comparative time formula provided in the regulation is acceptable under the facts and circumstances of this case. Petitioner simply contends that *no part* of the bonuses he received, being computed on the earnings of foreign subsidiaries of Johns-Manville Corp. and on the export earnings of Johns-Manville Corp., should be

considered compensation for labor or personal services performed in the United States. We disagree.

Petitioner does not contest respondent's allocation on a time basis of his basic compensation to services performed partly within and partly without the United States, and rightfully so. See *Geo. H. Salmon,* 3 B.T.A. 838 (1926). Petitioner's duties required him to be in the United States many days out of the year for the purpose of attending executive meetings with the headquarters staff of Johns-Manville Corp. Attending these meetings was undoubtedly an integral part of the services he performed as an executive overseeing the operations of various subsidiaries of Johns-Manville Corp. which were doing business in Europe and whatever services he performed with respect to the parent company's export business. There is nothing in the record of this case to indicate that the services performed by petitioner to earn his bonuses were any different than the services he performed to earn his basic salary. His attendance at executive meetings in the United States was apparently as much a part of the services he performed to earn his bonuses as it was of the services he performed to earn his basic salary. Both compensation devices required that he perform services partly within and partly without the United States. The fact that petitioner's bonuses were measured by reference to the earnings of the foreign subsidiaries and the parent company's export earnings does not mean that the services he performed to earn those bonuses were all performed outside the United States.

Petitioner's reliance on certain dicta appearing in *Benjamin E. Levy,* a Memorandum Opinion of this Court dated December 29, 1942, is misplaced. In that case the taxpayer was a citizen of the United States who resided in France during the taxable year 1938. He was chief executive officer of Coty, Inc., a French corporation, and its subsidiaries and also was responsible for Coty, Inc.'s business in the United States. During 1938 taxpayer spent 165 days inside the United States and 200 days outside the United States. During 1938 the taxpayer received compensation for services rendered from Coty, Inc., in the amount of $48,470. He also received compensation in the form of director's fees from the English subsidiary in the amount of $3,567.72 and from the French

company in the amount of $1,944.23. Of the total amount of $53,981.95 received from the Coty companies, the taxpayer reported on his United States tax return $22,998.72 as compensation for services performed in the United States and $30,983.23 as compensation for services performed outside the United States and thus exempt from United States tax. The Commissioner of Internal Revenue determined the taxpayer was not entitled to exclude any part of the amount of compensation received under the provisions of section 116(a) of the Revenue Act of 1938, which is similar to section 911 of the 1954 Code. Relying on article 119–7 of Regulations 101, which in all material respects is the same as section 1.861–4(b)(1)(i), Income Tax Regs., quoted above, the Court upheld taxpayer's claim that 200/365 of the entire compensation he received from the Coty companies was excludable from gross income. The Court went on to point out that while petitioner made no contention that the place where he performed his services for the foreign subsidiaries for which he received director's fees was wholly without the United States, "It may well be that these director's fees received from the foreign subsidiaries represented 'compensation for labor or personal services performed without the United States' " and thus exempt from tax in their entirety, but it declined to decide that point because the taxpayer had not raised it.

The main point of that opinion supports our conclusion herein. The dictum relative to the director's fees does not support petitioner's position here. It is likely that if director's fees were paid for attendance at directors meetings held outside the United States they would qualify as compensation for services performed wholly without the United States. But where, as here, there is no evidence that the bonuses received by petitioner were paid specifically and exclusively for services performed for the foreign subsidiaries and the parent company's export business wholly without the United States, the same reasoning does not apply.

We must sustain respondent's determination on this only issue in dispute. But because of concessions made by the parties,

*Decisions will be entered under Rule 155.*