HERBERT A. FILLER AND INGEBORG J. FILLER, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8767–76.    Filed May 27, 1980.

*Joan Ronder Domike* and *Paulette Segal,* for the respondent.

OPINION

RAUM *Judge:* The Commissioner determined income tax deficiencies against petitioners, citizens of the United States, for the years 1972 and 1973, in the amounts of $236 and $155, respectively. Petitioners are husband and wife, but the income of only the husband is here involved; he will be referred to hereinafter as the petitioner. During 1972 and 1973, he was a bona fide resident of France, employed there by "IBM-Europe." In the determination of the deficiencies, the Commissioner made certain uncontested adjustments in the total compensation received by petitioner in each year. Furthermore, the Commissioner recomputed the foreign tax credit with respect to the income taxes paid to France for each year. The recomputations thus made are not in dispute, except to the extent that the foreign tax credit is, in effect, reduced by reason of the Commissioner's treatment of a portion of petitioner's compensa-

tion as U.S. source income. The case was submitted to us for decision solely on the basis of a stipulation of facts.

During each of the years in issue, petitioner spent 5 days in the United States on business, and the parties have stipulated that he thus had U.S. source compensation for his services in the amounts of $1,108 and $1,157 for the years 1972 and 1973, respectively. There is no dispute that petitioner paid income taxes to France on the total amount of compensation received by him in those years, including the portions allocable to his services in the United States. Also, petitioners do not appear to contest the correctness, under our internal revenue laws, of the Commissioner's recomputation of the foregin tax credit.[1]

The sole issue raised in the pleadings is that petitioner is being subjected to double taxation on the portions of his income allocated to U.S. sources in violation of the Income Tax Treaty between the United States and France, and in particular article 25 thereof. United States-France Convention with respect to taxes on income and property, July 28, 1967, 19 U.S.T. 5280, 1968–2 C.B. 691 (as amended by the United States-France Income Tax Protocol, Oct. 12, 1970, 23 U.S.T. 20, 1972–1 C.B. 438)[2] hereinafter sometimes referred to as the convention or 1967 convention. We hold, (1) that article 25, which establishes a

---

[1]Nor would there be any valid basis for complaining that the Commissioner had not properly followed the applicable provisions of our Internal Revenue Code. The United States taxes its citizens on their worldwide income, regardless of whether they reside here or abroad. Sec. 61, I.R.C. 1954; E Owens, The Foreign Tax Credit 520–523 (1961). However, sec. 901 permits the crediting of foreign income taxes against the citizens' U.S. income tax. The credit is so constructed that a U.S. citizen with foreign source income is not subjected to double taxation on that income in the sense that the aggregate taxes on such income will be equal to a single tax computed at the greater of the U.S. or foreign tax rate. This result is achieved by sec. 901 in conjunction with sec. 904 which provides that the amount of the credit in respect of the foreign tax shall not exceed the same proportion of the U.S. tax which the taxpayer's foreign source income bears to his entire income for the year. In effect, the foreign tax credit operates in such manner that it will not reduce the U.S. tax on income from sources within this country. See *Schering Corp. v. Commissioner*, 69 T.C. 579, 591 (1978); E. Owens, *supra* at 524–525. Accordingly, by proper application of secs. 901 and 904, petitioner's earnings in respect of services performed in the United States (see sec. 861(a)(3)) remain fully taxable under our revenue laws. Cf. *Cini v. Commissioner*, 67 T.C. 857 (1977).

[2]The 1970 protocol does not relate in any manner to the issues presented in the instant case. In 1978, subsequent to the taxable years involved here, the convention was further amended by a second protocol. United States-France Income Tax Protocol, Nov. 24, 1978, 1979–51 I.R.B. 17, effective Jan. 1, 1979. The 1978 protocol was adopted primarily to take into account the change in French law, effective Jan. 1, 1979, which for the first time subjected U.S. citizens resident in France to French taxation on their worldwide income. See S. Exec. Rept. 96–4, 96th Cong., 1st Sess. 1, 64 (1979), 1979–51 I.R.B. 22, 32.

certain procedural device for dealing with rights agreed upon in the convention, does not afford petitioner a remedy which can be asserted in this Court; and (2) that the substantive provisions of the convention, properly construed, do not affect the operation of our Internal Revenue Code in the circumstances of this case, and instead call for the application of the French income tax law in such manner as to avoid double taxation.

1. *Article 25.*—Article 25, which is entitled "Mutual Agreement Procedure," is set forth below.[3] It provides for an international administrative procedure in which the "competent authority" of one country confers with the "competent authority" of the other with a view to resolving difficulties in the application of the convention. The two competent authorities may reach an agreement in respect of the imposition of taxes in a specific case that can supersede the application of the national law of either country. The procedure is entirely administrative, not judicial, and paragraph (1) of article 25 contemplates that the taxpayer may invoke it by "present[ing] his case to the competent authority of the Contracting State of which he is a resident." In this case, petitioner is a resident of France; accordingly, if he were to proceed under article 25, it is

---

[3]                                  ARTICLE 25

MUTUAL AGREEMENT PROCEDURE

(1) Where a resident of a Contracting State considers that the actions of one or both of the Contracting States result or will result for him in taxation not in accordance with this Convention, he may, notwithstanding the remedies provided by the national laws of those States, present his case to the competent authority of the Contracting State of which he is a resident.

(2) The competent authorities of the Contracting States shall endeavor to resolve by mutual agreement any difficulties or doubts arising as to the application of the Convention. In particular, the competent authorities of the Contracting States may consult together to endeavor to agree:

(a) To the same attribution of industrial or commercial profits to a resident of one of the Contracting States and its permanent establishment situated in the other Contracting State;

(b) To the same allocation of income between a resident of one of the Contracting States and any related person, provided for in Article 8; or

(c) To the same determination of the source of particular items of income.

(3) The competent authorities of the Contracting States may communicate with each other directly for the purpose of reaching an agreement in the sense of the preceding paragraphs. When it seems advisable for the purpose of reaching agreement, the competent authorities may meet together for an oral exchange of opinions.

(4) In the event that the competent authorities reach such an agreement, taxes shall be imposed on such income, and refund or credit of taxes shall be allowed, by the Contracting States in accordance with such agreement.

incumbent upon him to present the matter to the competent authority of France.[4] Certainly, this Court is not empowered to initiate any competent authority proceedings or to represent the United States in any negotiations with the competent authority of France.

If petitioner wishes to proceed under article 25, he must invoke competent authority proceedings in an appropriate manner,[5] not by attempting to present his case on the merits to this Court. We have jurisdiction only to decide whether the deficiency determined by the Commissioner is correct under the laws of the United States, as such laws may be affected by substantive provisions of the convention. And, as we have already pointed out, there is no dispute as to the correctness of the deficiency under our Internal Revenue Code. There remains only the question of whether any substantive provisions of the convention require a different result.

2. *The substantive provisions of the convention.*—The materials before us appear to indicate that petitioner initially sought a reduction in his French taxes to obtain relief from double taxation, but the French authorities denied such relief, relying upon article 15 of the convention. Article 15, which is set forth below to the extent pertinent,[6] would indeed support that

---

[4] We express no opinion as to whether, in addition to the procedure specified in art. 25, petitioner might be permitted to invoke competent authority proceedings by presenting his case to the competent authority of the United States. Cf. Rev. Proc. 77–16, 1977–1 C.B. 573. See also R. Cole, "Administrative Provisions of Income Tax Treaties," Income Tax Treaties 454–458 (J. Bischel ed. 1978).

[5] Petitioner contends that he has already unsuccessfully sought relief from the French authorities. However, we have no indication that he has attempted to invoke the "competent authority" procedure as opposed to merely seeking relief from the French officials in administering their own law. Those officials apparently relied upon art. 15 of the convention in denying relief to petitioner, and we think they did so erroneously, as will appear hereinafter. But there is nothing before us to show that "competent authority" proceedings were involved. In any event, this Court is not a proper forum in which to engage in or review any such proceedings.

[6]                               ARTICLE 15

DEPENDENT PERSONAL SERVICES

(1) Salaries, wages, and other similar remuneration paid to a resident of a Contracting State for labor or personal services shall be taxable only in that State unless such labor or personal services were performed in the other Contracting State. Remuneration received for labor or personal services performed within such other State may be taxed by such other State.

(2) Notwithstanding the provisions of paragraph (1), remuneration derived by a resident of a Contracting State in respect of an employment exercised in the other Contracting State shall not be taxable in such other State if:

conclusion if it stood alone. Although paragraph (1) of that article does empower the United States generally to tax the compensation of a French resident for services performed in the United States, paragraph 2(a) effectively takes that power away here since petitioner was not present in the United States for a period exceeding 183 days in each of the years 1972 and 1973.[7] However, article 15 does not stand alone, and its effect is completely eliminated here by the savings clause in paragraph (4)(a) of article 22,[8] since petitioner is a United States citizen.

Although many foreign countries tax their residents on their worldwide income, the United States taxes its citizens, as well as its residents, on their worldwide income. See R. Patrick, "United States Negotiating Objectives and Model Treaties," 5 N.Y.U. Inst. Tax & Bus. Planning 1, 9 (1978). Accordingly, the United States insists on the inclusion of a "savings clause" in its tax treaties; the effect of this clause is to reserve the right of the United States to tax its citizens and residents on the basis of the provisions of the Internal Revenue Code without regard to the provisions of the treaty. See J. Bischel, "Basic Income Tax Treaty Structures," Income Tax Treaties 9–11 (J. Bischel ed. 1978); E. Owens, *supra* n. 1, at 530–535; Rev. Rul. 59–56, 1959–1 C.B. 737, 738. Paragraph 4(a) of article 22 is just such a savings clause, which preserves the right of the United States to tax its own citizens in accordance with its own laws. See S. Exec. Rept. 5, 90th Cong., 2d Sess. 38 (1968), 1968–2 C.B. 881, 896. Cf. *Perkins v. Commissioner*, 40 T.C. 330, 339–340 (1963); *Crerar v. Commissioner*, 26 T.C. 702, 705–706 (1956). Since the savings clause does not include article 15 among the articles which take precedence

---

(a) The recipient is present in the other State for a period or periods not exceeding in the aggregate 183 days in the fiscal year concerned,

(b) The remuneration is paid by, or on behalf of, an employer who is not a resident of the other State, and

(c) The remuneration is not borne by a permanent establishment which the employer has in the other State.

[19 U.S.T. 5280, 5301–5302, 1968–2 C.B. 691, 698.]

[7] There does not appear to be any dispute as to the applicability of pars. (2)(b) and (c).

[8]                                    ARTICLE 22

GENERAL RULES OF TAXATION

(4)(a) The United States may tax its citizens and residents as if the present Convention had not come into effect.

(i) This provision shall not affect the rules laid down in Article 20 (Social Security Payments), Article 23 (Relief from Double Taxation), and Article 24 (Nondiscrimination).

[19 U.S.T. at 5307, 1968–2 C.B. at 700.]

over the savings clause, the savings clause has the effect of providing that the source of income allocation rules found in the Internal Revenue Code are applicable to U.S. citizens, rather than the provisions of article 15. These code provisions and the related regulations clearly indicate that petitioner's compensation for services performed in the United States is U.S. source income. See sec. 861(a)(3), I.R.C. 1954; sec. 1.861–4(b), Income Tax Regs. Accordingly, article 15 of the convention does not exempt such compensation from tax by the United States.

It is true that the savings clause does not affect the convention rules on relief from double taxation, found in article 23.[9] However, a fair reading of this provision indicates that petitioner is entitled to a tax credit from France, and not the United States, in respect of compensation for services performed in the United States. Under article 23, the United States is required to provide a tax credit only for the "appropriate amount" of French taxes paid; and this "amount" is strictly limited so as not to be in excess of the U.S. tax on French source income. The report of the Senate Committee on Foreign Relations recommending that the Senate give its advice and consent to ratification of the treaty explains that although specific reference in the treaty was not made to the foreign tax

---

[9]

ARTICLE 23

RELIEF FROM DOUBLE TAXATION

Double taxation of income shall be avoided in the following manner:

(1) The United States shall allow to a citizen, resident, or corporation of the United States as a credit against its tax specified in paragraph (1) of Article 1 the appropriate amount of income taxes paid to France. Such appropriate amount shall be based upon the amount of French tax paid but shall not exceed that portion of the United States tax which net income from sources within France bears to the entire net income.

(2) In the case of France:

(a) Income other than that mentioned in paragraph (b) below shall be exempt from the French taxes mentioned in paragraph (1) of Article 1 while the income is, by reason of the Convention, taxable in the United States.

(b) As regards income taxable in both Contracting States in accordance with the provisions of this Convention, France shall allow to a resident of France receiving such income from United States sources a tax credit corresponding to the amount of tax levied in the United States. Such tax credit, not exceeding the amount of French tax levied on such income, shall be allowed against taxes mentioned in paragraph (1)(b)(i) of Article 1 of this Convention, in the bases of which such income is included.

(c) Notwithstanding the provisions of paragraphs (a) and (b), French tax may be computed on income chargeable in France by virtue of this Convention at the rate appropriate to the total of the income chargeable in accordance with French law.

[19 U.S.T. at 5309–5310, 1968–2 C.B. at 701.]

credit provisions in the Code, in order that subsequent statutory modifications would not alter the effect of the convention, a per-country limitation on the amount of the credit was to be applied under the convention. S. Exec. Rept. 5, *supra* at 39, 1968–2 C.B. at 896–897. It is reasonable to infer that since the convention contemplated the use of a per-country limitation (as was then provided in section 904(a)(1) of the Code), it was also assumed that the related Code sections determining the source of income (including section 861(a)(3)) would also be applicable,[10] as those source of income provisions are necessary for application of a per-country limitation on the credit. Moreover, the convention itself provides that terms not otherwise defined are to be applied

---

[10]This was clearly the assumption under the terms of the income tax treaty with France in effect prior to the entry into force of the 1967 Convention. Art. 14A of that treaty read as follows:

ARTICLE 14

It is agreed that double taxation shall be avoided in the following manner:

A - *As regards the United States of America:*

Notwithstanding any other provision of this Convention, the United States of America in determining the income and excess-profits taxes, including all surtaxes, of its citizens, or residents, or corporations, may include in the basis upon which such taxes are imposed, all items of income taxable under the Revenue Laws of the United States of America, as though this Convention had not come into effect. The United States of America shall, however, deduct from the taxes thus computed the amount of French income tax paid. This deduction shall be made in accordance with the benefits and limitations of Section 131 of the United States Internal Revenue Code relating to credit for foreign taxes.

[United States-France Convention for the Avoidance of Double Taxation, July 25, 1939, 59 Stat. 893, 900–901, 1945 C.B. 522, 524 (terminated Aug. 11, 1968).]

The relevant Senate committee reports recommending that the Senate advise and consent to ratification of the 1939 convention indicate that this provision was interpreted to mean that "the United States adheres to its existing system of credit for foreign taxes," as then provided by sec. 131, I.R.C. 1939, with "the limitations [contained therein] as to the amount of the credit * * * [remaining] equally effective under the convention." S. Exec. Rept. 4, 78th Cong., 2d Sess. 13 (1944). These limitations were similar to those applicable to the present case. Sec. 131(b) contained per-country and overall limitations on the foreign tax credit, thus necessitating reference to sec. 119, I.R.C. 1939, which defined income from sources "within" and "without" the United States. The provisions relating to income from personal services contained in sec. 119 were substantially identical to the provisions of sec. 861(a)(3), I.R.C. 1954. The committee reports on the 1967 convention indicate that the methods for avoiding double taxation in the 1939 convention were to be continued in the 1967 convention; specific references to the foreign tax credit provisions in the Internal Revenue Code were omitted merely to allow later modifications of the Code without contravening the convention, and there is no suggestion in the reports that any modification of the U.S. obligation to provide a foreign tax credit, as limited by the Internal Revenue Code provisions, was intended. See S. Exec. Rept. 5, *supra* at 39, 1968–2 C.B. at 896–897. See generally H. Lazerow, "The United States - French Income Tax Convention," 39 Fordham L. Rev. 649, 716–719 (1971).

by the United States in accordance with United States law;[11] this provision would appear to require use of U.S. source of income rules, at least where the treaty fails to adequately define the source of income, as is the case here.[12] Thus, it seems clear that in article 23 of the convention, the United States consented only to provide a foreign tax credit on income attributable to sources in France, as determined under the source of income rules of the Internal Revenue Code, and not to income from United States sources. At the same time, France, in article 23(2)(b), consented to provide a tax credit against French taxes for U.S. income taxes on income from sources within the United States.

It would thus appear that under the convention, relief from double taxation is available here only as a credit against the French tax. To be sure, we are aware that petitioner has already sought such relief and it was denied by the French authorities in reliance upon article 15. But we think they erred in this respect, as more fully explained above. Perhaps petitioner may seek reconsideration by the French authorities in the application of their own law as modified by the convention. And as a last resort, he may be able to present his case to the French competent authority, thereby initiating the international administrative procedure established by article 25, in respect of which this Court has no jurisdiction. However, we express no opinion as to such courses of action.

*Decision will be entered for the respondent.*

---

[11] ARTICLE 2

GENERAL DEFINITIONS

(2) As regards the application of the Convention by a Contracting State any term not otherwise defined shall, unless the context otherwise requires, have the meaning which it has under the laws of that Contracting State relating to the taxes which are the subject of the Convention.

[19 U.S.T. at 5283–5284; 1968–2 C.B. at 692.]

[12] Source of income rules are provided for dividends, interest, royalties, and capital gains. 1967 Convention, art. 9(4), 10(6), 11(6), 12(1), 19 U.S.T. at 5293–5296, 5298, 1968–2 C.B. at 695–697. The 1967 Convention otherwise does not define the sources of other types of income, such as income from the performance of personal services. See J. Bischel, "Basic Income Tax Treaty Structures," Income Tax Treaties 30–31 (J. Bischel ed. 1978).