T.C. Summary Opinion 2016-22

UNITED STATES TAX COURT

ELAZAR M. COLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4501-14S.                           Filed May 16, 2016.

Elazar M. Cole, pro se.

<u>Richard J. Hassebrock</u>, for respondent.


SUMMARY OPINION

ASHFORD, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year at issue, and all Rule references are to the Tax

(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other Court, and this opinion shall not be treated as precedent for any other case.

After concessions, one issue remains for decision: whether petitioner, a citizen of the United States and a permanent resident of Israel, may exclude from taxable income proceeds from sales of stock made while he was a permanent resident of Israel. Petitioner argues he is exempt from taxation pursuant to the Convention between the Government of the United States of America and the Government of Israel with Respect to Taxes on Income, U.S.-Israel, Nov. 20, 1975, Tax Treaties (CCH) para. 4603 (hereinafter Convention). Respondent disagrees. We hold that petitioner is not exempt from taxation under the Convention.

## Background

The parties submitted this case to the Court for decision without trial under Rule 122. The Court incorporates by reference the parties' stipulation of facts and accompanying exhibits.

Petitioner, Elazar Cole, resided in Israel at the time his petition was filed and was a citizen of the United States throughout 2010. In 2010 petitioner became

---

[1](...continued)
Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

a permanent resident of Israel after moving there in 2009. As a result of moving to Israel, petitioner qualifies for a 10-year Israeli "tax holiday", which exempts him from Israeli tax on non-Israeli-source capital gain income.[2]

Before moving to Israel petitioner purchased 3,000 shares of stock in Neogen Corporation (Neogen), a Michigan incorporated entity, for $42,065 on April 25, 2001.[3] Petitioner sold 2,000 shares of Neogen stock on September 1, 2010, for $101,088, and then sold his remaining 1,000 shares of Neogen stock on November 4, 2010, for $55,924. As a result, petitioner's total proceeds were $157,012. After subtracting his $42,065 basis, petitioner realized total long-term

---

[2]In 2008 amendment 168 to the Israeli Income Tax Ordinance provided new immigrants and returning Israelis a 10-year tax holiday from Israeli tax that would otherwise be imposed on foreign source income. Income Tax Ordinance, 5721-1961, sec. 97(b) (Isr.), translated in Ministry of Finance, http://www.financeisrael.mof.gov.il/FinanceIsrael/Docs/En/legislation/FiscalIssues/5721-1961_Income_Tax_Ordinance_%5BNew_Version%5D.pdf; see also Alon Kaplan et al., "Israeli Tax Benefits for New Immigrants and Expatriates", 2010 Emerging Issues 5383 (2010).

[3]The parties' stipulation of facts states that petitioner's total stock basis in the 3,000 shares of Neogen stock is $32,065, with $17,935 and $14,130 as the costs for two purchases of Neogen stock by petitioner, which is incorrect. The transaction confirmation statements attached to the parties' stipulation of facts show that petitioner paid $27,935 and $14,130. We may disregard stipulations that are clearly contrary to the facts disclosed by the record. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195-196 (1989). Thus, we find that petitioner purchased the stock for $27,935 and $14,130 and that his basis in the stock was $42,065.

capital gain of $114,947 from the sale of his 3,000 shares of Neogen stock in 2010.

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for the 2010 taxable year and attached Schedule D, Capital Gains and Losses, on which he reported the $157,012 of proceeds from the sale of Neogen stock. However, petitioner did not include any of the proceeds in his taxable income. In April 2013 petitioner submitted Form 1040X, Amended U.S. Individual Income Tax Return, for the 2010 taxable year and attached an explanation as to why he had excluded the proceeds from his sale of Neogen stock. The explanation states: "Please note this transaction is to reverse the gain from the Neogen sale reported above. As per trust agreement and detailed within the 1041, no tax should be administered on this transaction persuant [sic] to treatise [sic] between the United States and taxpayers [sic] resident country (Israel)."

On January 28, 2014, respondent mailed petitioner a notice of deficiency for the 2010 taxable year, determining a deficiency in petitioner's Federal income tax of $13,212 and an accuracy-related penalty pursuant to section 6662(a) of $2,642.

On March 4, 2014, petitioner timely filed a petition with this Court disputing the determination.[4]

Discussion

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner does not contend that the burden of proof should shift to respondent under section 7491(a), nor has he established that the requirements for shifting the burden of proof have been met. Accordingly, the burden of proof remains on petitioner. See sec. 7491(a)(2).

A fundamental principle of U.S. tax law is that U.S. citizens are subject to Federal income tax on their worldwide income. Cook v. Tait, 265 U.S. 47, 56 (1924); Huff v. Commissioner, 135 T.C. 222, 230 (2010); see also sec. 61(a)(3) (gross income includes "all income from whatever source derived", including "[g]ains derived from dealings in property"). However, section 894(a)(1) provides that the Federal income tax provisions "shall be applied to any taxpayer with due regard to any treaty obligation of the United States which applies to such taxpayer." Petitioner contends that pursuant to the Convention the proceeds from

[4]Respondent later conceded the section 6662(a) penalty.

his sale of Neogen stock in 2010 are not subject to Federal income tax. Petitioner cites article 15, paragraph 1 of the Convention, which generally provides that "[a] resident of one of the Contracting States shall be exempt from tax by the other Contracting State on gains from the sale, exchange, or other disposition of capital assets". Convention para. 4603.31, at 107,022. On the other hand, respondent contends that petitioner's stock sale proceeds remain subject to Federal income tax pursuant to article 6, paragraph 3 of the Convention, commonly known as the saving clause,[5] which provides that "[n]otwithstanding any provisions of this Convention except paragraph (4), a Contracting State may tax its residents * * * and its citizens as if this Convention had not come into effect." Id. at 107,017.

This Court has analyzed similar saving clauses and has stated that "article 15 does not stand alone, and its effect is completely eliminated here by the saving[] clause * * * since petitioner is a United States citizen." Filler v.

_____

[5]The Convention between the Government of the United States of America and the Government of Israel with Respect to Taxes on Income, U.S.-Israel, November 20, 1975, Tax Treaties (CCH) para. 4603 (hereinafter Convention) includes the "traditional saving clause" present in many U.S. income tax treaties under which the United States "reserves the right to tax its Citizens and residents". Treasury Department Technical Explanation of the Convention, Tax Treaties (CCH) para. 4666, at 107,294; see also Filler v. Commissioner, 74 T.C. 406, 410 (1980) (noting that although many foreign countries tax their residents on their worldwide income, the United States insists on the inclusion of a saving clause in its tax treaties in order to reserve its right to tax both its citizens and residents on their worldwide income).

Commissioner, 74 T.C. 406, 410 (1980) (analyzing saving clause in U.S.-France income tax treaty with respect to article 15 (Dependent Personal Services) of that treaty). We have stated that the effect of the saving clause is to "reserve the right of the United States to tax its citizens and residents on the basis of the provisions of the Internal Revenue Code without regard to the provisions of the treaty." Id.; see also Abrahamsen v. Commissioner, 142 T.C. 405, 410-411 (2014) (analyzing saving clause in U.S.-Finland income tax treaty); Duncan v. Commissioner, 86 T.C. 971, 974-975 (1986) (analyzing saving clause in U.S.-Canada income tax treaty); Treasury Department Technical Explanation of the Convention, Tax Treaties (CCH) para. 4666, at 107,302 (hereinafter Technical Explanation) (explaining that if the recipient of gain is a resident of one contracting state and a citizen of the other contracting state, that other contracting state may tax the citizen-recipient without regard to article 15 because of the saving clause of article 6, paragraph 3); Rev. Rul. 59-56, 1959-1 C.B. 737 (stating that the purpose of saving clause provisions in income tax treaties is to make it understood that the United States reserves the right, in the case of its citizens, residents, or corporations, to include in its tax base all items of income taxable under its revenue laws). Accordingly, petitioner is not entitled to exclude from taxation the proceeds from his sale of Neogen stock pursuant to article 15, paragraph 1 of the

Convention because he is a U.S. citizen and the proceeds are subject to Federal income tax under the Convention's saving clause.

Petitioner contends that disallowing the article 15, paragraph 1 exemption under the saving clause is unreasonable because such treatment effectively entitles the saving clause to nullify the Convention. We disagree. The saving clause does not nullify the Convention; it nullifies the benefits provided by certain provisions to current citizens and certain former residents and citizens. Convention, para. 4603.13, at 107,017, para. 4604, at 107,053; see also Filler v. Commissioner, 74 T.C. at 410. The Convention provides that certain of its articles take precedence over the saving clause--but article 15 is not among them.[6] Convention, para. 4603.13, at 107,017. In addition, the saving clause applies only to current citizens and certain former residents and citizens of a contracting state who currently reside in the other contracting state. Id.; para. 4604, at 107,053; see also Filler v. Commissioner, 74 T.C. at 410. As this Court has previously held, the saving

---

[6]Article 6, paragraph 4 of the Convention preserves certain benefits conferred by the contracting state under article 10 (Grants), article 21 (Social Security Payments), article 22 (Governmental Functions), article 23 (Teachers), article 24 (Students and Trainees), article 26 (Relief from Double Taxation), article 27 (Nondiscrimination), article 28 (Mutual Agreement Procedure), and article 30 (Diplomatic and Consular Officers). Convention, para. 4603.13, at 107,017. Thus, these articles generally are not subject to the Convention's saving clause.

clause operates to deny certain treaty benefits to U.S. citizens and it is valid. Abrahamsen v. Commissioner, 142 T.C. at 410-411; Duncan v. Commissioner, 86 T.C. at 974-975; Filler v. Commissioner, 74 T.C. at 410.

Petitioner argues that the phrase "shall be exempt" in article 15 and the phrase "may tax" in the saving clause, taken together, indicate a limited application of the saving clause to article 15.  As discussed, the Convention provides that certain of its articles take precedence over the saving clause, but article 15 is not one of them.  See supra note 6 and accompanying text; see also Filler v. Commissioner, 74 T.C. at 410-411 (holding that since the saving clause in the U.S.-France income tax treaty does not include article 15 among the articles which take precedence over it, it has the effect of providing that the Internal Revenue Code's income source allocation rules are applicable to U.S. citizens); Rev. Rul. 59-56, supra (emphasizing that one of the fundamental principles of treaty interpretation is that particular clauses and phrases should not be studied as detached expressions, but rather every part of a treaty must be considered in determining the meaning of any of its parts).  Furthermore, the saving clause is clearly intended to apply to article 15.  See Technical Explanation, para. 4666, at 107,302.  Accordingly, the saving clause is not limited in its application to article 15.

Finally, we reject the premise urged by petitioner that respondent's concession of the section 6662(a) accuracy-related penalty indicates that petitioner's Convention position is legitimate and proper. Respondent's concession has no impact on our conclusion with respect to the contested deficiency. See Sparks Nugget, Inc. v. Commissioner, T.C. Memo. 1970-74 (1970), aff'd, 458 F.2d 631 (9th Cir. 1972).

In conclusion, we hold that petitioner must recognize total long-term capital gain of $114,947 attributable to his sale of Neogen stock in 2010. That amount is includible in gross income by virtue of section 61(a)(3), and for the reasons stated above is not excluded under the Convention. In reaching our holding herein, we have considered all arguments made, and to the extent not discussed above, we find them to be moot, irrelevant, or without merit. To reflect the foregoing,

Decision will be entered

under Rule 155.