T.C. Summary Opinion 2012-41

UNITED STATES TAX COURT

MAYER WEINBERGER AND SARAH WEINBERGER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23544-10S.                          Filed May 2, 2012.

<u>Ronald Jay Cohen</u>, for petitioners.

<u>Rose E. Gole</u> and <u>Michael J. De Matos</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the petition

was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in, additions to tax on, and accuracy-related penalties with respect to petitioners' Federal income taxes as follows:

| Year | Deficiency | Addition to tax Sec. 6651(a)(1) | Accuracy-related penalty Sec. 6662(a) |
|---|---|---|---|
| 2004 | $9,652 | $1,026.00 | $1,930.40 |
| 2005 | 9,564 | 1,003.50 | 1,912.80 |
| 2006 | 9,419 | 978.50 | 1,883.80 |
| 2007 | 9,234 | 569.40 | 1,846.80 |
| 2008 | 8,716 | -- | 1,743.20 |

After concessions by respondent,[2] the issues now before the Court are as follows:

(1) Whether petitioners received earned income in the amounts reported for each year in issue for purposes of the additional child tax credit;

(2) whether petitioners are entitled to the dependent care credit for each year in issue;

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Respondent concedes that petitioners are entitled to six child dependency exemption deductions and the child tax credit for each year in issue.

(3) whether petitioners are liable for the addition to tax under section 6651(a)(1) for failure to timely file their Federal income tax returns for 2004, 2005, 2006, and 2007; and

(4) whether petitioners are liable for the accuracy-related penalty under section 6662(a) for negligence or disregard of rules or regulations with respect to each year in issue.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits. Petitioners resided in Antwerp, Belgium, when the petition was filed.

Mayer Weinberger and Sarah Weinberger were married in 1988 and have lived together in Antwerp, Belgium, at all times relevant thereafter.

Sometime after their marriage, Mr. Weinberger began attending a Jewish school in Antwerp called The Friends of Satmar Kollel Antwerp Ltd. (Satmar). Satmar is an institution where married Jewish men engage in the full-time advanced study of the Torah, the Talmud, and the laws of Jewish life. Although some remain for longer periods, students at Satmar typically study for two or three years. Satmar students generally receive a stipend from the school to defray living expenses.

Mr. Weinberger received such a stipend while he was a full-time student at Satmar.

After four years of study at Satmar, Mr. Weinberger was hired by the principal of the school to conduct lectures for the students regarding a variety of religious subjects involving the Jewish tradition.

During the years in issue Mr. Weinberger continued to teach, and he received payments from Satmar for each lecture he gave at the school. In addition, Mr. Weinberger spent his free time engaged in rabbinical studies and became a rabbi shortly before trial. Meanwhile, Mrs. Weinberger worked in Antwerp as a teacher at an all-female school called Bais Rachel.

Also during the years in issue petitioners had six dependent children who were United States citizens and who lived with petitioners in Belgium. Petitioners paid a child care center at Bais Rachel to care for their young children while petitioners were teaching and lecturing at their respective schools.

Petitioners filed joint U.S. Federal income tax returns (tax returns) for 2004, 2005, 2006, 2007, and 2008 on June 13, August 16, August 16, and September 8, 2008, and June 1, 2009, respectively.[3] On each of those tax returns, petitioners

---

[3] Petitioners also filed Belgian income tax returns for the years in issue.

reported $48,000 of wages and claimed, inter alia, the additional child tax credit and the dependent care credit.

Respondent subsequently issued notices of deficiency in which he determined that the amounts reported as wage income on petitioners' tax returns for the years in issue should be reclassified as "other income" because petitioners allegedly failed to substantiate that the income constituted "earned income" within the meaning of section 32. See Discussion infra. Furthermore, respondent disallowed, inter alia, the additional child tax credits and dependent care credits claimed by petitioners.

## Discussion[4]

A.  Burden of Proof

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed to be correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Moreover, credits are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any credit claimed.  Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Segel v. Commissioner, 89 T.C. 816, 842 (1987).

---

[4] The United States and the Kingdom of Belgium signed a tax treaty in 1970, Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income, U.S.-Belg., July 9, 1970, 23 U.S.T. 2687, which was in force from Oct. 13, 1972, through Dec. 28, 2007, at which time the current treaty, Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income, U.S.-Belg., Nov. 27, 2006, Tax Treaties (CCH) para. 31,011, came into force.  Because the United States taxes its citizens on their worldwide income, a "saving clause" is included in both tax treaties which reserves the right of the United States to tax its citizens on the basis of the Internal Revenue Code notwithstanding the treaty provisions.  See Filler v. Commissioner, 74 T.C. 406, 410 (1980).  While both treaties provide certain exceptions to the saving clause, none are relevant here.  Furthermore, the two treaties have no bearing on any of the issues for decision as presented by the parties in this case, and the existence of the treaties is noted here simply for purposes of completeness.

Under section 7491(a)(1), the burden of proof with respect to any factual issue may shift from the taxpayer to the Commissioner if the taxpayer produces credible evidence bearing on that issue that is relevant to ascertaining the taxpayer's liability. However, section 7491(a)(1) applies only if, inter alia, the taxpayer has complied with the substantiation and recordkeeping requirements of the Internal Revenue Code. See sec. 7491(a)(2)(A) and (B). As discussed below, petitioners failed to fully substantiate their income and expenses and did not maintain appropriate records. Accordingly, the burden of proof remains on petitioners. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

B. Additional Child Tax Credit

Section 24(a) allows eligible taxpayers a credit for each "qualifying child".[5] Section 24(d) provides that a portion of the credit may be refundable, which portion is commonly referred to as the additional child tax credit.

To be eligible for the additional child tax credit in any given year a taxpayer must have received "earned income" within the meaning of section 32. See sec. 24(d)(1)(B)(i); see also Heilman v. Commissioner, T.C. Memo. 2011-210. Petitioners contend that the amounts Mr. Weinberger received from Satmar

---

[5] Respondent concedes that all six of petitioners' children claimed on their returns are qualifying children for purposes of the child tax credit and the additional child tax credit.

represent wages paid for his services as a lecturer and thus constitute earned income. Respondent argues, however, that the amounts received by Mr. Weinberger represent educational grants and do not constitute earned income under section 32.[6] Respondent also argues that petitioners failed to substantiate the amounts reported as wages on their tax returns. We hold that the amounts received by petitioners, as substantiated by the record and discussed infra, constitute earned income within the meaning of section 32.

1. Earned Income

The term "earned income" includes "wages, salaries, tips, and other employee compensation" but only if the amounts of those items are includible in gross income. Sec. 32(c)(2)(A)(i).

At some point shortly after petitioners were married in 1988, Mr. Weinberger became a full-time student at Satmar and received funds from the school to help defray living expenses. Upon completing four years of study, however, he was hired by Satmar as a lecturer, and he continued to be employed by Satmar as a lecturer during the years in issue.

---

[6] Although the notices of deficiency reclassified all of petitioners' income, the record demonstrates that Mrs. Weinberger received earned income from Bais Rachel in exchange for her services as a teacher. It appears that respondent no longer contends otherwise. Accordingly, we focus on the amounts received by Mr. Weinberger during the years in issue.

On the whole, the record demonstrates that Mr. Weinberger was hired to lecture and that he was compensated for each lecture given. Admittedly, Mr. Weinberger spent time studying to become a rabbi during the years in issue, but his rabbinical studies were conducted during his personal time. Although Mr. Weinberger occasionally studied to prepare for his lectures, the payments he received for each lecture were not educational grants but payments for his services.

At trial Mr. Weinberger introduced monthly payment reports provided by Satmar (payment reports) and a spreadsheet maintained by Satmar (spreadsheet) that detail each lecture he performed for the school during the years in issue. Each payment report describes, inter alia, the nature of the lesson he taught and the number of days he lectured on a particular subject during the month. The payment reports also clearly list the corresponding amount paid to Mr. Weinberger for each lecture.

In sum, and on the basis of the entire record, we are satisfied that Mr. Weinberger was paid to provide services to Satmar as a lecturer during the years in issue and that the payments he received from Satmar in those years represented earned income within the meaning of section 32. Therefore, petitioners are entitled to claim the additional child tax credit to the extent they have substantiated the

amounts of earned income they received during each year in issue. See, e.g., sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

2. Substantiated Earned Income

Respondent argues, in the alternative, that petitioners failed to fully substantiate the amounts reported as earned income on their tax returns. In that regard, and to the extent specified below, we agree with respondent.

The payment reports from Satmar list the amount Mr. Weinberger received for each lecture beginning with late March 2004 and ending in the first quarter of 2007. The spreadsheet from Satmar reconciles with those payment reports during the aforementioned period. In addition, the spreadsheet includes payments Mr. Weinberger received during the final three quarters of 2007 and the first quarter of 2008.

The payment reports and spreadsheet, however, do not show any payments for the period January 1 through March 22, 2004, or any payments during the final three quarters of 2008 (missing periods). Although Mr. Weinberger contends that he received payments from Satmar for his lectures during the missing periods, there is no documentary evidence in the record to support such a claim. In this regard, the Court is "not required to accept the self-serving testimony of petitioner * * * as gospel." Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Without further

documentary evidence, we are unwilling to conclude that Mr. Weinberger received any amount of income beyond what is shown on the payment reports and spreadsheet.

With respect to the earned income received by Mrs. Weinberger as a teacher at Bais Rachel, petitioners likewise failed to substantiate the full amounts reported on their tax returns for the years in issue. Petitioners have proven, however, that Mrs. Weinberger received earned income during those years in amounts that coincide with the amounts reported on her pay stub for 2008 and petitioners' Belgian income tax returns.

Therefore, we conclude that petitioners received the following aggregate amounts of earned income:[7]

| Tax Year | Mayer Weinberger | Sarah Weinberger | Total |
|----------|------------------|------------------|--------|
| 2004 | $18,428 | $8,335 | $26,763 |
| 2005 | 26,145 | 8,763 | 34,908 |
| 2006 | 26,727 | 10,723 | 37,450 |
| 2007 | 28,605 | 10,172 | 38,777 |
| 2008 | 10,975 | 11,593 | 22,568 |

Overall, petitioners failed to maintain complete records of their income and provided insufficient evidence to substantiate the full amounts claimed on their tax

---

[7] All income and expense amounts have been converted from euro to U.S. dollars using the conversion rates in the parties' stipulation of facts and have been rounded to the nearest dollar.

returns.  Accordingly, we are unwilling to conclude that petitioners received any earned income beyond the amounts enumerated above.

## C.  Dependent Care Credit

### 1.  General Requirements

Section 21 allows a credit for a percentage of "employment-related expenses" paid.[8]  Employment-related expenses include expenses paid for the care of a qualifying individual that enable the taxpayer to be gainfully employed.  Sec. 21(b)(2)(ii).  The term "qualifying individual" includes a dependent, as defined in section 152(a), of the taxpayer who has yet to reach 13 years of age.  Sec. 21(b)(1)(A).

In the notices of deficiency respondent disallowed the dependent care credit claimed by petitioners each year because they allegedly failed to establish that their children were qualifying individuals pursuant to section 21.  Respondent has since conceded that petitioners are entitled to dependency exemption deductions with respect to each child claimed as a qualifying individual for purposes of the

---

[8]  The amount of employment-related expenses that may be claimed for purposes of the dependent care credit in any given tax year is limited to the earned income of the lower earning spouse for that year.  Sec. 21(d)(1).  Because we hold that both petitioners received earned income during each year in issue, further substantive discussion of earned income in the dependent care credit context is unnecessary.

dependent care credit. Furthermore, the record indicates that those dependent children were under the age of 13 during the years in issue, and it appears respondent does not contend otherwise. Therefore, we conclude that petitioners' dependent children are qualifying individuals within the meaning of section 21(b)(1)(A).

Furthermore, petitioners have demonstrated that they were both employed during the years in issue and their employment made it necessary for them to pay child care expenses for their qualifying children. Thus, on the basis of the entire record, we hold that petitioners are entitled to the dependent care credit with respect to the substantiated amounts of expenses they paid for the care of their qualifying children. See, e.g., sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

2. Substantiated Employment-Related Expenses

Petitioners provided sufficient documentary evidence to substantiate a portion of the employment-related expenses they paid during each year. On the basis of that documentation, we are satisfied that petitioners paid the following amounts of employment-related expenses in regard to their qualifying children for each respective year in issue:

| Year | Amount of Expenses |
|------|--------------------|
| 2004 | $3,899 |
| 2005 | 3,410 |
| 2006 | 3,801 |
| 2007 | 4,206 |
| 2008 | 4,009 |

As a general rule, if, in the absence of required records, a taxpayer provides sufficient evidence that the taxpayer has paid an expense, but the taxpayer is unable to adequately substantiate the amount, the Court may estimate the amount of such expense. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). In order for the Court to estimate the amount of an expense, however, we must have some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). Although Mr. Weinberger claimed he and his wife paid employment-related expenses beyond the amounts they were able to adequately substantiate, they provided no documentary evidence of further payments and no basis upon which a greater allowance may be justified. Accordingly, we are unwilling to conclude that petitioners paid employment-related expenses beyond the substantiated amounts listed above.

D. Additions to Tax

Section 6651(a)(1) imposes an addition to tax for failure to file a return by its due date. The addition equals 5% of the amount required to be shown as tax on the return for each month or fraction thereof that the return is late, not to exceed 25% in the aggregate.

Section 7491(c) generally provides that the Commissioner bears the burden of production with respect to the liability of an individual for any penalty or addition to tax. The Commissioner may meet his burden of production by coming forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty or addition to tax. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent has proven, and has therefore discharged his burden of production under section 7491(c), that petitioners' 2004, 2005, 2006, and 2007 tax returns were not received and filed by their respective due dates.[9]

"A failure to file a tax return on the date prescribed leads to a mandatory penalty unless the taxpayer shows that such failure was due to reasonable cause and not due to willful neglect." McMahan v. Commissioner, 114 F.3d 366, 368 (2d Cir. 1997), aff'g T.C. Memo. 1995-547. A showing of reasonable cause requires a taxpayer to show that he or she exercised "ordinary business care and prudence"

---

[9] Petitioners timely filed their 2008 tax return.

but was nevertheless unable to file the return within the prescribed time.  United States v. Boyle, 469 U.S. 241, 246 (1985); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioners have failed to offer persuasive evidence to establish that the late filing of their 2004, 2005, 2006, and 2007 returns was due to reasonable cause as, for example, the fact that they worked long hours and cared for many children is insufficient to relieve them from liability under section 6651(a)(1).  See Howe v. Commissioner, T.C. Memo. 2000-291.  Accordingly, we hold that petitioners are liable for the addition to tax under section 6651(a)(1) for 2004, 2005, 2006, and 2007 to the extent applicable as a result of the parties' computations under Rule 155.

E.  Accuracy-Related Penalties

Section 6662(a) and (b)(1) imposes a penalty equal to 20% of the amount of any underpayment attributable to negligence or disregard of rules or regulations.  The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations.  Sec. 6662(c).  Negligence also includes any failure to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

As a general rule, the duty of filing accurate tax returns cannot be avoided by placing responsibility on an agent. See Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987); Pritchett v. Commissioner, 63 T.C. 149, 174 (1974). However, a taxpayer may avoid the accuracy-related penalty by showing that his or her reliance on the advice of a professional, such as a commercial tax return preparer, was reasonable and in good faith. Sec. 1.6664-4(b)(1), Income Tax Regs. Specifically, the taxpayer must establish that (1) the preparer was a competent professional, (2) the taxpayer provided accurate and necessary information to the preparer, and (3) the taxpayer actually relied in good faith on the preparer's judgment. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978). Blind reliance on a tax return preparer, however, is not a

defense; rather, the taxpayer is generally required to review the tax return before signing and filing it.  Bronson v. Commissioner, T.C. Memo. 2002-260; Osborne v. Commissioner, T.C. Memo. 2002-11; Bilzerian v. Commissioner, T.C. Memo. 2001-187.

The record establishes that petitioners failed to maintain adequate records and properly substantiate their income and expenses.  See sec. 7491(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Thus, we turn to whether petitioners acted with reasonable cause and in good faith.

Mr. Weinberger had little to say at trial with respect to petitioners' failure to maintain records and substantiate their income and child care expenses, and Mrs. Weinberger did not testify.  Mr. Weinberger simply explained that his wife was responsible for the couple's United States and Belgian tax reporting.  In that respect he testified, albeit vaguely, that his wife consulted a commercial tax return preparer based in Israel called U.S. Benefits Group (U.S. Benefits), which allegedly prepared the couple's tax returns for the years in issue.  Each of petitioners' tax returns for those years, however, includes the typewritten statement "self-prepared" and was not signed by a tax return preparer.  Moreover, there is no documentary evidence in

the record to suggest that petitioners relied on a tax return preparer named U.S.

Benefits, or any tax return preparer for that matter.

Even if we assume, arguendo, that petitioners hired a commercial tax return

preparer, there is no evidence that the preparer was a competent professional, that

complete and correct information was given to the preparer, or that petitioners

reviewed their returns for accuracy. Mr. Weinberger demonstrated at trial that he

had little knowledge regarding whether complete and accurate documents were

provided to U.S. Benefits and was unfamiliar with the tax returns themselves.

Furthermore, petitioners never called their alleged tax return preparer as a witness.

See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946),

aff'd, 162 F.2d 513 (10th Cir. 1947).

Mr. Weinberger testified that he and his wife no longer seek the services of

U.S. Benefits and have become skeptical of the company's business practices.[10] If

they did, in fact, hire U.S. Benefits to prepare their tax returns, we question whether

petitioners did so in good faith. Moreover, regardless of whether they hired U.S.

Benefits or not, we are skeptical whether petitioners performed even a cursory

---

[10] Although not entirely clear from the record, it appears that U.S. Benefits promised its clients refundable tax credits from the U.S. Government and charged a 10% commission on any refund its clients received.

review of their tax returns to confirm the accuracy of the information reported therein.

In sum, petitioners have not met their burden of persuasion with respect to reasonable cause and good faith.  See Higbee v. Commissioner, 116 T.C. at 446-447.  Accordingly, petitioners are liable for the accuracy-related penalty under section 6662(a) for each year in issue to the extent the penalties are applicable as a result of the parties' computations under Rule 155.

## Conclusion

We have considered all of the arguments advanced by the parties, and, to the extent not addressed herein, we conclude that those arguments are irrelevant, moot, or meritless.

To give effect to the foregoing,

Decision will be entered

under Rule 155.